UNITED STATES DISTRICT COURT
for the
MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| Jason Yerk, an individual, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| People for the Ethical Treatment | ) | |
| of Animals, a Virginia not-for-profit | ) | Civil Action No.: 2:09-cv-00537-JES-SPC |
| corporation | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SECOND MOTION FOR
SUMMARY JUDGMENT**

Comes now the Plaintiff, JASON YERK, by and through his undersigned counsel

pursuant to Fed.RCiv.P. 57, and hereby files this Response to Defendant's Second Motion

for Summary Judgment, stating as follows:

*Background*

1.    In October 2008, the Plaintiff, Jason Yerk, was solicited by the Defendant, People for

the Ethical Treatment of Animals (PETA), to provide information regarding an

incident that he witnessed which gave rise to the suspicion that a canine  was being

abused.  At that time, Yerk was employed with the K-9 Unit of Lee County Sheriff's

Office ("LCSO").  The suspected abuser was also employed with the same K-9 Unit.

2.  Because of Yerk's perception of the politics and corruption within LCSO, Yerk

    advised PETA that he could not provide any information regarding the suspected

    abuse because it would inevitably lead to his termination. PETA fraudulently and/or

    negligently induced Yerk's cooperation, by repeatedly promising and assuring Yerk

    that they would not disclose his identity to any third parties and that the information

    that he provided was absolutely confidential and would solely be used for internal

    investigative purposes. In exchange for the promise of confidentiality, Yerk agreed

    to provide PETA a recorded statement regarding the events that he witnessed

3.  Shortly after Yerk provided the recorded statement, PETA breached the

    confidentiality agreement and disclosed Yerk's identity to LCSO as a person who had

    reported suspected abuse by a fellow K-9 officer.  Further, they provided LCSO a

    copy of Yerk's recorded statement.  As a direct result of PETA's breach of the

    confidentiality agreement, Yerk was constructively terminated by LCSO when he was

    advised by his supervisor that his disclosure to PETA would result in his termination

    if he did not immediately resign.

4.  As a direct consequence of his termination, Yerk was forced into bankruptcy in

    January of 2009 (Case No. 9:09-bk-01818-ALP). The bankruptcy was prepared with

    the assistance of counsel and Yerk relied on counsel to properly advise him regarding

    the appropriate course of action.  Being that Yerk did not know that he had a cause

*Yerk v. PETA*
Civil Action No.: 2:09-cv-00537-JES-SPC
Page 3 of 14

of action based on PETA's breach of the confidentiality agreement and tortious

conduct, Yerk truthfully stated in his bankruptcy filing that he did not have any

unliquidated claims and that he was not a part to any suit. See Exhibit A.

5.    In fact, it was not until August of 2009 that Yerk decided to file suit against PETA.

Having never been advised by his bankruptcy counsel that he had a duty to update

filings submitted eight months earlier, and being that Yerk has no training in

bankruptcy law, Yerk did not amend his bankruptcy pleadings to reflect the lawsuit.

In fact, Yerk did not learn of that duty until undersigned counsel advised him that

PETA had filed the subject motion for summary judgment on March 30, 2010 wherein

PETA was seeking to shield itself from liability based on his inadvertent failure to

update his bankruptcy pleadings.  At that time, Yerk immediately authorized that all

steps be taken to correct any mistake that was made in the bankruptcy proceedings.

Pursuant to that authority, undersigned counsel contacted Yerk's bankruptcy lawyer,

Richard Hollander, Esq., and directed that the final order be amended to include this

case as an asset.

6.    Pursuant to the direction given, on April 30, 2010 a Motion to Modify Order

Confirming Plan was filed with the bankruptcy court. Attached hereto as Exhibit B

is a copy of the Motion which requests that the bankruptcy court modify its order

confirming plan so as to include the following language: "The Debtor has a cause of

action that may be collectible. If during the lifetime of this plan there is recovery by

the Debtor from his action, a portion of the proceeds as determined by the Court shall

be paid to satisfy unsecured creditors and Debtor is authorized to pursue a cause of

action against PETA." A hearing on the motion to modify is currently in the process

of being scheduled.

### CHOICE OF LAW ANALYSIS

7.      All eight counts of Yerk's Complaint against PETA are based on state law causes of

action.

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332, based on the complete diversity of citizenship between the parties and an

amount in controversy exceeding $75,000.00, exclusive of interest and costs.

9.      A federal court sitting in diversity must apply state substantive law. *See Allison v.*

*Vintage Sports Plaques*, 136 F.3d 1443, 1445 (11th Cir.1998) (citing *Erie R.R. v.*

*Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus, this court is

"bound to decide the case the way it appears [Florida's] highest court would." *Towne*

*Realty, Inc. v. Safeco Ins. Co.*, 854 F.2d 1264, 1269 n. 5 (11th Cir.1988).

**THE DEFENDANT HAS ERRONEOUSLY RELIED ON FEDERAL COMMON LAW IN MOVING THIS COURT FOR FINAL SUMMARY JUDGMENT ON THE BASIS OF THE DOCTRINE OF JUDICIAL ESTOPPEL**

10.    The Defendant cites several cases for the proposition that a Plaintiff who fails to disclose pending claims in his bankruptcy filings is judicially estopped from pursuing those claims in district court. However, none of these cases involve claims based on Florida law.

11.    Specifically, *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269 (11th Cir. 2010), *Burnes v. Pemco Aeroplex. Inc.*, 291 F.3d 1282 (11th Cir. 2002), *De Leon v. Comcar Industries, Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003) and *Casonova v. Pre Solutions, Inc.*, 228 Fed. Appx. 837 (11th Cir. 2007) all involved wrongful termination suits brought pursuant to, *inter alia*, Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991. Since Florida does not recognize the tort of wrongful termination, these cases by definition cannot be based on Florida law. *See, e.g.*, *Bass v. Metro Dade County Dept. of Corrections and Rehabilitation*, 798 So.2d 835 (Fla. 3d DCA 2001) ("there is no action in Florida for the common law tort of wrongful termination.")

12.    In cases based upon state law claims, the court is bound by the principles of state law, as explained above. *See Original Appalachian Artworks, Inc. v. S. Diamond Associates, Inc.*, 44 F.3d 925 (11th Cir. 1995) ("In diversity case, application of

doctrine of judicial estoppel is governed by state law.").   Thus, when evaluating the

application of the judicial estoppel doctrine, the applicable analysis is not the one that

is mistakenly set forth by the Defendant, but rather the one set forth by Florida's

appellate courts.  In *Blumberg v. USAA Cas. Ins. Co.*, 790 So.2d 1061 (Fla. 2001), the

Florida Supreme Court stated as follows:

> "Judicial estoppel is an equitable doctrine that is used to prevent
> litigants from taking totally inconsistent positions in separate judicial,
> including quasi-judicial, proceedings." *Smith v. Avatar Properties, Inc.,*
> 714 So.2d 1103, 1107 (Fla. 5th DCA 1998). The doctrine prevents
> parties from "making a mockery of justice by inconsistent pleadings,"
> *American Nat'l Bank v. Federal Deposit Ins. Corp.*, 710 F.2d 1528,
> 1536 (11th Cir.1983), and "playing fast and loose with the courts."
> *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990).
>
> In *Chase & Co. v. Little*, 116 Fla. 667, 156 So. 609, 610 (1934), this
> Court stated the following regarding the judicial estoppel doctrine:
>
> In order to work an estoppel. . . . the parties must be the same and . . .
> . an estoppel is not raised by conduct of one party to a suit, unless by
> reason thereof the other party has been so placed as to make it to act in
> reliance upon it unjust to him to allow that first party to subsequently
> change his position. There can be no estoppel where both parties are
> equally in possession of all the facts pertaining to the matter relied on
> as an estoppel; where the conduct relied on to create the estoppel was
> caused by the act of the party claiming the estoppel, or where the
> positions taken involved solely a question of law.

*See also Losacano v. Deaf and Hearing Connection of Tampa Bay, Inc.*, 988 So.2d

66, n. 2 (Fla. 2nd DCA 2008)("Additionally, we note the elements of judicial estoppel

under federal law as applied in *Barger* may not be identical to the elements usually

required under state law in Florida."); *Vining v. Segal*, 773 So.2d 1243 (Fla. 3d DCA 2000) ("The failure to disclose an asset in a bankruptcy action does not justify the application of judicial estoppel in a subsequent action absent a showing of detrimental reliance.")

13. There is an exception to the identity of parties requirement, that being when "special fairness and policy considerations" require the application of the judicial estoppel doctrine. *Blumberg* at 1067.[1] However, as will be discussed below, the facts of this case do not merit the application of that exception.

14. Thus, in order to apply the doctrine of judicial estoppel, the Florida Supreme Court requires both identity of the parties and detrimental reliance. *Blumberg* at 1066. It is not alleged (nor can it) by the Defendant it had an interest in the bankruptcy proceeding or that it in any way relied to its detriment upon the allegedly inconsistent positions taken by the Plaintiff.

***SPECIAL FAIRNESS AND POLICY CONSIDERATIONS DO NOT MERIT AN EXCEPTION TO THE RULE THAT A PARTY CANNOT INVOKE THE DOCTRINE OF JUDICIAL ESTOPPEL WITHOUT PRIVITY AND DETRIMENTAL RELIANCE***

15. In setting forth policy considerations for this Court to consider as to whether the doctrine of judicial estoppel should apply, the Defendant has absolutely no evidence that Yerk acted with malice, knowledge or forethought in failing to update his

---

[1] Although there few cases interpreting this exception, an illustrative example cited by a court is that judicial estoppel would apply to bar an employee's negligence suit against his employer if the employee had accepted worker's compensation benefits. *See Zeeuw v. BFI Waste Systems of North America, Inc.*, 997 So.2d 1218 (Fla. 2d DCA 2008).

bankruptcy proceedings.  Therefore, the policy consideration in applying the doctrine

of judicial estoppel in this case simply do not apply when you consider the following

facts which are established by the bankruptcy court's record and the exhibits to this

response:

a.)   When Yerk filed the bankruptcy proceeding in January of 2009 he had no

knowledge that he had a viable cause of action against PETA.  Therefore, his

disclosure statement was truthful and complete.

b.)   Through the course of the bankruptcy proceeding Yerk was never affirmatively

requested through depositions, affidavit or otherwise to disclose the existence

of any pending lawsuits.

c.)   At no point during the bankruptcy proceeding did Yerk affirmatively state that

the subject claim existed at a time when he knew of its existence.

d.)   Yerk had no knowledge of bankruptcy laws and therefore strictly relied on the

advice of counsel.

e.)   During the bankruptcy proceeding Yerk was truthful and complete in

providing documentation and information requested from him by his attorney

in order to bring the bankruptcy proceedings to conclusion.

f.)   Yerk was never advised by his bankruptcy lawyer that he had a duty to notify

the bankruptcy court of a lawsuit filed after his bankruptcy.

g.)    If Yerk had been properly advised of his duty to update his bankruptcy proceeding he would have.

h.)    Upon learning of his duty to update his bankruptcy proceedings to reflect this suit, Yerk immediately advised his attorneys to take all steps necessary to amend the error.

i.)    Since learning of the inadvertent disclosure Yerk has filed a motion to amend his bankruptcy proceedings to reflect the subject suit.

j.)    Yerk intends to make his creditors whole with the proceeds from this suit.

k.)    The bankruptcy court still has jurisdiction over Yerk's estate and will in all likelihood amend the confirmation order so as to allow Yerk's creditors to obtain the benefit of the proceeds that are derivative of PETA's breach of contract and tortious acts. In other words, PETA should not enjoy a windfall to the detriment of Yerk's creditors.

l.)    PETA waited for the final confirmation of the bankruptcy confirmation plan before placing Yerk or undersigned counsel on notice of the fact that Yerk had failed to update his bankruptcy proceeding. Certainly PETA and its counsel could have contemplated the possibility that Yerk, a person with no training in bankruptcy law, inadvertently failed to update his bankruptcy proceeding. As such, they should have immediately provided notice of the fact to Yerk, this

Court or the bankruptcy court, so as to avoid harm to Yerk's creditors. Instead, they waited until the exact day (March 30, 2010) of the final confirmation of the bankruptcy plan to assert a judicial estoppel defense via a motion for summary judgment. Such conduct is not an advancement of equity, a goal this Court should consider in granting relief under the doctrine of judicial estoppel. Instead, it is simply gamesmanship and acts of self interest on the part of a party that wants to avoid the merits of a claim and side step the interest of Yerk's creditors. Allowing such precedent would lead to a true perversion of the discretionary doctrine of judicial estoppel. Attached hereto as Exhibit C are e-mails between undersigned counsel and PETA's counsel wherein PETA's counsel refuses to disclose when PETA learned of Yerk's failure to update his bankruptcy proceedings. Further, PETA's counsel takes the position that it does not matter when they learned of Yerk's non-disclosure.

m.)   The Defendant in this case was not mislead or affected in any perceivable way as a result of Yerk's non-disclosure. In fact, at this point the case is not even at issue.

n.)   The bankruptcy court still has jurisdiction over the distribution of assets and therefore an amendment of the proceedings to allow this asset to be disclosed would not lead to a mockery of the judicial system.

o.)  The bankruptcy court still has jurisdiction to impose sanctions upon Yerk if it

is believed that they are appropriate under the circumstances.

p.)  Other than the failure to update, PETA cannot make any showing that Yerk

has acted in calculated manner to "make a mockery of the judicial system."

***EVEN IF THIS COURT DETERMINES THAT SPECIAL FAIRNESS AND POLICY CONSIDERATIONS MERIT AN EXCEPTION TO THE PRIVITY AND DETRIMENTAL RELIANCE RULES, THE MOTION MUST NONETHELESS BE DENIED AS IT IS PREMATURE.***

16.  Under Florida law a trustee automatically develops an interest in the debtor's assets

upon the filing of the bankruptcy proceeding. *See Losacano*, 988 So.2d at 70 ("We

conclude that the action in this case was owned by [the] trustee of the bankruptcy

estate and could not be dismissed on any theory of judicial estoppel. In the event that

[the trustee] recovers a judgment in this action that exceeds all obligations owing to

the creditors in the bankruptcy proceeding, then assets could revert to [the Plaintiff].")

17.  As such, entering summary judgment in favor of the Defendant at this point in the

case would violate the trustee's due process rights under Florida law. *See Losacano*,

988 So.2d at 69 ("At this point, it should be obvious that under basic principles of due

process the trial court could not dismiss an action owned by the trustee without

providing notice to the trustee and an opportunity to be heard.")

18.     Should the court decide that Yerk is estopped from pursuing the instant case as a

matter of law due to his allegedly inconsistent positions, this Court would be required

to provide the trustee notice of its interests and opportunity to be heard on the matter.

## *Conclusion*

19.     According to the Defendant's motion for summary judgment, the application of

judicial estoppel is appropriate in the instant case because the Plaintiff has taken

allegedly inconsistent positions by failing to disclose the subject claim on his

bankruptcy schedules.  The evidence of record, shows that the non-disclosure was the

consequence of inadvertence.

20.     Under the federal rationale for the application of the judicial estoppel doctrine, privity

is not required.

21.     However, the court is bound to apply the principles of Florida law in cases based on

causes of action deriving from Florida law, such as the instant case.

22.     Under Florida's analysis of the judicial estoppel doctrine, the party seeking its

application must have been a participant in the previous judicial or quasi-judicial

proceeding and must also have relied upon the allegedly inconsistent position to its

detriment.

23.     That has not occurred in the instant case and the "special fairness and policy

consideration" exception does not apply.  In fact, the Defendant's concealment of the

issue until the very day that bankruptcy plan was confirmed strongly supports the

conclusion that policy considerations dictate that the Defendant should not be rewarded to the detriment of Yerk's creditors.

24.   Under the State and Federal judicial estoppel analysis, the Defendant must prove that the Plaintiff intended to make a mockery of the judicial system.

25.   The evidence upon which the Defendant relies upon consist of nothing more than the act itself. In opposition, sworn testimony and supporting documentation is provided by Yerk which establish that the non-disclosure was due to inadvertence and ineffective assistance of counsel. Summary judgment should be granted only when the moving party shows that there are no genuine issues as to any material fact and that it is entitled to judgment as a matter of law. *See* Fla.R.Civ.P. 1.510(c); *Wills v. Sears, Roebuck & Co.*, 351 So.2d 29, 30 (Fla.1977). A party moving for summary judgment has the burden of conclusively showing that there are no genuine issues of material fact. *See Moore v. Morris*, 475 So.2d 666 (Fla.1985). When assessing whether genuine issues of material fact exist, the trial court must draw every possible inference in favor of the party against whom summary judgment is sought. *See Id*. Where even the slightest doubt exists on the facts, the trial court should not grant summary judgment. *See Klein v. Robbins*, 947 So.2d 623 (Fla. 3d DCA 2007).

26.   Thus, the Defendant's motion for summary judgment must be denied as a matter of law under both the federal and Florida analyses.

27.    In the alternative, the Plaintiff requests that the Court stay the proceedings for a

period of thirty (30) days in order to allow the Plaintiff to obtain the trustee's consent

to substitute for the Plaintiff.


WHEREFORE, the Plaintiff, JASON YERK, respectfully requests that this honorable

court denies the Defendant's motion for summary judgment and concludes that the doctrine

of judicial estoppel does not bar this cause of action.


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copy of the foregoing was served via

CM/ECF on April 30, 2010 to Robert Hall, Esq., 101 E. Kennedy Boulevard, Suite 900,

Tampa, FL 33602; (813) 261-7899.

**Vernis & Bowling of Broward, P.A.**
5821 Hollywood Blvd., First Floor
Hollywood, FL 33021
Tel: (954) 927-5330; Fax: (954) 927-5320

BY: _____/s/_____
       Jose P. Font, Esquire
       Florida Bar No.: 0738719