```
               UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
                    FORT MYERS DIVISION


JASON YERK,

                    Plaintiff,

vs.                                  Case No.  2:09-cv-537-FtM-29SPC


PEOPLE for the ETHICAL TREATMENT of
ANIMALS, a Virginia not-for-profit
corporation,

                    Defendant.
_____
```

**OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment Based on Judicial Estoppel And Supporting Memorandum (Doc. #37) filed on March 31, 2010, and Certified Copies of Exhibits (Doc. #40), filed on April 9, 2010.  Plaintiff filed a Response (Doc. #45) on April 30, 2010, to which defendant filed a Reply Memorandum (Doc. #49) on May 24, 2010, with the permission of the Court.  The parties also filed additional material (Docs. #50, 51.)  Defendant seeks summary judgment in its favor as a sanction for plaintiff's non-disclosure of his claims against defendant as an asset in his bankruptcy case.[1]

---

[1] Plaintiff's previously pending Chapter 13 bankruptcy case has since been converted to a Chapter 7 case.  (See Case No. 9:09-bk-01818-ALP, Doc. #49.)

I.

Plaintiff Jason Yerk (plaintiff or Yerk) asserts that in October, 2008, he entered into an agreement with People for the Ethical Treatment of Animals (defendant or PETA) and that PETA breached this agreement on November 4, 2008 (Doc. #1, ¶¶ 8-9; Doc. #24-1). On January 30, 2009, Yerk signed, under penalty of perjury, a Voluntary Petition under Chapter 13 of the Bankruptcy Code. At the time, plaintiff asserts that he did not know he had a viable claim against PETA. As a result, he failed to disclose the potential lawsuit as an asset in his bankruptcy Schedules. (Doc. #50-1.) Plaintiff's Voluntary Petition was filed by bankruptcy counsel from Naples, Florida on January 31, 2009. (Doc. #40-1.)

On March 23, 2009, Yerk retained a law firm in Hollywood, Florida to determine whether he had a viable claim against PETA or others. (Doc. #50-1, ¶5.) On March 24, 2009, that law firm sent a letter to PETA notifying it that the firm had been retained and requesting insurance information. (Doc. #49-2.) On March 27, 2009, Yerk testified under oath before the Trustee at a meeting of creditors that he had read and signed the Petition, Schedules and related documents; he was personally familiar with the information in those documents and the information was true and correct; all of his assets were listed; and that no one owed him money and there was no one he could sue. (Doc. #49-3.) Yerk asserts that it was

not until April, 2009, that he was advised by his non-bankruptcy attorney that he had a viable cause of action against PETA. (Doc. #50-1, ¶8.)

On May 8, 2009, Yerk's non-bankruptcy attorney sent PETA a demand letter for $1.2 million, but agreeing to settle PETA's liability for $585,000.00. Attached to the demand letter was a courtesy copy of a federal complaint to be filed if the offer was not accepted in thirty days. The offer was not accepted by PETA, and on August 14, 2009, Yerk filed the eight-count Complaint in the instant case (Doc. #1).

Yerk failed to correct or amend his Bankruptcy Petition or Schedules to reflect the claim against PETA as an asset, and failed to otherwise notify the Bankruptcy Court, creditors, or his bankruptcy attorney of his pending federal lawsuit against PETA. On March 30, 2010, the Bankruptcy Court issued an order confirming Yerk's Chapter 13 plan (Doc. #37-3), without consideration of the PETA claim.

The next day, PETA filed a motion in this federal case (Doc. #37) seeking summary judgment in its favor as a sanction for Yerk's non-disclosure in the bankruptcy proceedings. As a result, on April 30, 2010, plaintiff's bankruptcy attorney moved the Bankruptcy Court to modify the confirmation plan to recognize this federal suit as an asset. (Doc. #45, Exh. 1.) Also on April 30, 2010, the Chapter 13 Standing Trustee moved to dismiss the Chapter

13 case based on Yerk's failure to disclose all assets, in violation of 11 U.S.C. § 521(a)(1).

The Bankruptcy Court held hearings on the motions on May 21, 2010 and June 3, 2010. (Doc. #51-2.) On June 22, 2010, the Bankruptcy Court issued an Order granting the Trustee's motion to dismiss plaintiff's Chapter 13 bankruptcy proceeding for failure to disclose an asset, but staying the effective date of the Order for fourteen days to permit Yerk to convert the case to another chapter under the Bankruptcy Code. (Doc. #51-1.) On July 16, 2010, Yerk filed a Notice of Voluntary Conversion to Chapter 7 in the Bankruptcy Court. (Case No. 9:09-bk-01818-ALP, Doc. #48.) On August 10, 2010, the Bankruptcy Court entered an Order Converting Case to Chapter 7. (Case No. 9:09-bk-01818-ALP, Doc. #49.)

## II.

"Chapter 13 of the Code creates a reorganization mechanism for individual debtors, and permits them to repay their outstanding debts-either in full, or on a pro rata basis-over a period of time. Unlike Chapter 7, in which the debtor's property is subject to a complete liquidation, Chapter 13 permits a debtor to repay either some or all of his debts based on the monthly payment schedule approved by the bankruptcy court." United States v. Archibald, 212 Fed. Appx. 788, 790 n.1 (11th Cir. 2006). See also In re Barrett, 543 F.3d 1239, 1242 (11th Cir. 2008).

A debtor seeking protection under the bankruptcy laws has a statutory duty to disclose all assets and potential assets to the bankruptcy court. 11 U.S.C. §§ 521(1), 541(a)(7). "The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather a debtor must amend his financial statements if circumstances change." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286 (11th Cir. 2002). Thus, "a Chapter 13 debtor has a statutory duty to disclose changes in assets." Robinson, 595 F.3d at 1274. The duty of a Chapter 13 debtor to disclose changes in assets was well established at the time of the Voluntary Petition in this case. De Leon v. Comcar Indus., Inc., 321 F.3d 1289, 1291 (11th Cir. 2003); Ajaka v. BrooksAmerica Mortg. Corp., 453 F.3d 1339, 1344 (11th Cir. 2006); Waldron v. Brown, 536 F.3d 1239, 1244 (11th Cir. 2008).

When the reorganization plan is confirmed by the Bankruptcy Court, the property in the bankruptcy estate is re-vested in the debtor free and clear of any claim or interest of any creditor provided for by the plan, except as otherwise provided in the plan or the order confirming the plan. 11 U.S.C. § 1327(b),(c). Thus, "while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the

plan." Telfair v. First Union Mortg. Corp., 216 F.3d 1333, 1340 (11th Cir. 2000).

### III.

The parties, each citing to Eleventh Circuit decisions, argue over whether the Court applies federal law or Florida law to the issue of judicial estoppel. Original Appalachian Artworks, Inc. v. S. Diamond Assocs., Inc., 44 F.3d 925, 930 (11th Cir. 1995) did indeed state: "Because this is a diversity case, the application of the doctrine of judicial estoppel is governed by state law." Original Appalachian did not involve a bankruptcy proceeding in any way, and the statement was dicta because the Court concluded it need not decide whether plaintiff should be judicially estopped from taking a position inconsistent with that in a prior proceeding. Id. at 930. On the other hand, Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002) stated: "In this case, judicial estoppel is raised in the context of a bankruptcy proceeding and a federal employment discrimination case; therefore, federal law governs our analysis." The many cases citing Burnes for the legal standards relating to judicial estoppel have typically been, like Burnes, cases where federal jurisdiction over the underlying case was premised upon federal question jurisdiction and the prior proceeding was in Bankruptcy Court.

The instant case is a hybrid of the two situations. It involves state law claims with federal jurisdiction founded on

diversity of citizenship, but the prior proceeding was in Bankruptcy Court. The Eleventh Circuit applied Burnes in such a situation at least once in an unpublished opinion, Pavlov v. Ingles Markets, Inc., 236 Fed. Appx. 549 (11th Cir. 2007), although without discussion of the potential conflict of laws issue. The First Circuit has opined that its "likely" conclusion would be that federal law applies where "both the putatively estopping conduct and the putatively estopped conduct occur in a federal case," because "a federal court has a powerful institutional interest in applying federally-developed principles to protect itself against cynical manipulations." Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 32 (1st Cir. 2004). The issue is not academic because PETA has the ability to invoke judicial estoppel under Eleventh Circuit authority, Burnes, 291 F.3d at 1286, but not under Florida judicial estoppel principles. Grau v. Provident Life and Acc. Ins. Co., 899 So. 2d 396, 401 (Fla. 4th DCA 2005)(finding judicial estoppel did not apply because defendants were not parties to bankruptcy proceedings and as non-creditors were not prejudiced by inconsistent positions).

The Court need not decide the issue because, assuming PETA is correct and federal law applies, the Court will exercise its discretion and deny summary judgment under judicial estoppel principles.

**A.   Judicial Estoppel**

The purpose of judicial estoppel is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749-50 (2001)(citations omitted). This includes "prevent[ing] a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by the party in a previous preceding." <u>Robinson</u>, 595 F.3d at 1273 (citation omitted). Three factors typically inform the decision: "(1) whether the present position is clearly inconsistent with the earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding would create the perception that either the first or second court was mislead and; (3) whether the party advancing the inconsistent position would derive an unfair advantage." <u>Robinson</u>, 595 F.3d at 1273, citing <u>New Hampshire v. Maine</u>, 532 U.S. at 750-51. Referring to <u>Burnes</u> as the "seminal case in the Eleventh Circuit on the theory of judicial estoppel" <u>Robinson</u> noted that <u>Burnes</u> outlined two primary factors for establishing judicial estoppel. "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." <u>Burnes</u>, 291 F.3d at 1285. Additionally, "courts must always give

due consideration to all of the circumstances of a particular case." Id.

### (1) Clearly Inconsistent Positions, First Under Oath

Under the legal principles summarized above, Yerk had an obligation to disclose the potential lawsuit against PETA in his Voluntary Petition and Schedules and his testimony at the creditors meeting, and to amend his bankruptcy pleadings to disclose both the potential claim and then the actual lawsuit. The failure to do so constituted statements under oath to the Bankruptcy Court that Yerk had no such claim against PETA. The filing of the Complaint in the district court was clearly inconsistent, since it asserted that he did have a claim against PETA whose value was more than $75,000. Failure to timely amend a Chapter 13 proposed reorganization plan to reflect a pending claim while simultaneously pursing that claim in another court constitutes inconsistent positions under oath. Ajaka, 453 F.3d at 1344.

### (2) Success of Earlier Position

Yerk was successful in obtaining the approval of the Bankruptcy Court in approving a Chapter 13 plan which omitted the PETA claim/lawsuit as an asset. The PETA claim would have been by far the largest asset owned by Yerk. The confirmation of the plan would have resulted in Yerk being re-vested with all property which was not addressed in the plan, which in this case included the PETA lawsuit.

**(3)   Unfair Advantage to Plaintiff**

An additional consideration is "whether the party advancing the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire v. Maine, 532 U.S. at 751.  Here, Yerk obtained no unfair advantage over PETA and did not impose any unfair detriment on PETA.  Yerk's actions adversely impacted his creditors, but not PETA, which was neither a creditor nor a party to the bankruptcy proceedings.  While the lack of prejudice is not a bar to invoking judicial estoppel, Ajala, 453 F.3d at 1345, it is a factor which weighs against the relief sought by PETA.

**(4)   Calculated to Make Mockery of the Judicial System**

Judicial estoppel requires that there must be "intentional contradictions, not simple error or inadvertence." Robinson, 595 F.3d at 1275 (quoting Am. Nat'l Bank of Jacksonville v. FDIC, 710 F.2d 1528, 1536 (11th Cir. 1983)).  Phrased somewhat differently, the intent is required to be "cold manipulation and not an unthinking or confused blunder . . .." Ajaka, 453 F.3d at 1345 n.7.  Intent may be inferred from a "debtor's failure to satisfy its statutory disclosure duty," but such an inference is improper if "the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." Barger v. City of Cartersville, 348 F.3d 1289, 1296 (11th Cir. 2003).

Here it is not clear that Yerk acted with cold manipulation. It is also not clear that Yerk had knowledge of his potential PETA claim at the time he signed the Voluntary Petition and Schedules. It is clear, however, that by the time he consulted an attorney on March 23, 2009, about suing <u>someone</u> over the incident, Yerk had sufficient knowledge that there may be a viable claim against PETA. Giving Yerk the benefit of all doubt, he knew he had a viable cause of action, by his own admission, in April, 2009. Even after a demand letter asserting the value of the claim as $1.2 million, and the filing of an actual federal lawsuit, Yerk did not amend his bankruptcy pleadings. Thus, the Court may infer that he intentionally concealed the PETA claim from the Bankruptcy Court.

**(5) Other Circumstances of Case**

"Judicial estoppel is an equitable doctrine invoked at a court's discretion." <u>Burnes</u>, 291 F.3d at 1285. "Judicial estoppel is intended to be a flexible rule in which courts must 'take into account all of the circumstances of each case in making our determination.'" <u>Ajaka</u>, 453 F.3d at 1344 (citation omitted).

PETA was not a creditor or a party to the bankruptcy proceedings, and describes the cause of action against it as "a legal theory which is not legally viable." (Doc. #49, p. 1.) Yet PETA's claims non-disclosure of that legally stillborn claim in the bankruptcy proceedings was serious enough for this Court to impose the ultimate sanction - judgment against the plaintiff without

-11-

examination of the merits of his claim - pursuant to judicial estoppel principles.

Within the 180 objection period to the order confirming the plan, Yerk through bankruptcy counsel advised the Bankruptcy Court and all creditors of the existence of the PETA litigation. The plan was approved on March 30, 2010, and Yerk's motion to amend the plan was filed on April 30, 2010. Based upon the Trustee's motion, and without requiring any creditor to file an objection in the remaining time, the Bankruptcy Court sanctioned Yerk for his failure to inform that court of the existence of the PETA claim. The Bankruptcy Court dismissed the Chapter 13 proceeding, but allowed Yerk to convert to a Chapter 7 proceeding. The Bankruptcy Court has provided new deadlines for creditors to object, and this time the creditors have knowledge of the existence of the PETA litigation.

Considering the circumstances, the application of judicial estoppel in this case does not advance the interests of equity. Therefore, in its discretion, the court declines to allow judicial estoppel "to become a sword of the defense bar rather than a shield of judicial integrity." Thompson v. Quarles, 392 B.R. 517, 529 (S.D. Ga. 2008)(citing Strauss v. Rent-A-Center, Inc., 192 Fed. Appx. 821, 823 (11th Cir. 2006)). Granting PETA's motion would victimize the creditors yet a second time, withdrawing from their grasp an asset which has now been restored to the bankruptcy estate

by the Bankruptcy Court. See Biesek v. Soo Line R.R. Co., 440 F.3d 410, 413 (7th Cir. 2006)("Judicial estoppel is an equitable doctrine and, using it to land another blow on the victims of bankruptcy fraud is not an equitable application.").

**B.  Yerk's Lack of Standing**

Because this case is the property of the bankruptcy estate, the plaintiff/debtor lacks standing to pursue these claims. Parker v. Wendy's Int'l, Inc., 365 F.3d 1268, 1272 (11th Cir. 2004). "[A] trustee, as the representative of the bankruptcy estate, is the proper party in interest, and is the only party with standing to prosecute causes of action belonging to the estate." Id.  As a result, on September 2, 2010 the Court entered an Order instructing the trustee to either substitute in as the plaintiff or abandon the claim back to the debtor pursuant to § 554 of the Bankruptcy Code. (Doc. #52.)  On September 4, 2010, the trustee informed the Court that he wished to substitute in as plaintiff and prosecute this action.  (Doc. #53).  With the permission of the Court, PETA filed a Reply to the Response of the Trustee on September 17, 2010. (Doc. #56.)

The Court has reviewed the Reply and the cases cited therein and finds that the Chapter 7 trustee is the appropriate plaintiff in this action.  Since the defendant raised judicial estoppel prior to the conversion of the bankruptcy case to a Chapter 7, the trustee is subject to the defense to the same extent as Yerk.  The

-13-

Court, however, declines to exercise its authority under judicial estoppel in the manner requested by PETA. The trustee will be permitted to substitute in as plaintiff and prosecute the action.

Accordingly, it is now

**ORDERED**:

1. Defendant's Motion for Summary Judgment Based on Judicial Estoppel (Doc. #37) is **DENIED**.

2. Robert E. Tardif, Jr.'s Motion to Substitute Trustee Robert E. Tardif, Jr. for Plaintiff Jason Yerk (Doc. #57) is **GRANTED**. Pursuant to Fed. R. Civ. P. 17, the Chapter 7 trustee, Robert E. Tardif, Jr., will be substituted as plaintiff in this case. The Clerk of Court shall change the caption to reflect "Robert E. Tardif, Jr., as Trustee for Jason Yerk."

3. Plaintiff's Motion for Leave to File a Response to the Defendant's Reply to the Trustee's Response to the Court's Order (Doc. #58) is **DENIED** as moot.

**DONE AND ORDERED** at Fort Myers, Florida, this __21st__ day of September, 2010.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record
Bankruptcy Trustee