UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT E. TARDIF, JR. as trustee for
JASON YERK,

               Plaintiff,

vs.                         Case No.  2:09-cv-537-FtM-29SPC

PEOPLE for the ETHICAL TREATMENT of
ANIMALS, a Virginia not-for-profit
corporation,

               Defendant.
_____

## OPINION AND ORDER

This matter comes before the Court on defendant's Motion to Dismiss or, in the alternative, for Summary Judgment (Doc. #15) filed on November 9, 2009.  Plaintiff filed a Response and Cross-Motion for Summary Judgment on December 7, 2009 (Doc. #24).  Defendant filed a Response to Plaintiff's Cross-Motion for Summary Judgment on January 7, 2010 (Doc. #27).  Plaintiff also filed a Motion to Strike Exhibits submitted in support of defendant's Motion to Dismiss or, in the alternative, for Summary Judgment on January 13, 2010 (Doc #28).  Defendant filed a response to the Motion to Strike on January 21, 2010.

### I.

The Complaint (Doc. #1) alleges the following: In October 2008, Guillermo Quintana (Quintana) reported to People for the Ethical Treatment of Animals (defendant or PETA) that Lee County Sheriff's Deputy Travis Jelly was engaging in animal abuse of his

canine partner.  (Doc. #1, ¶5.)  Quintana provided Deputy Jason Yerk's contact information to PETA as a corroborating witness. Deputy Jason Yerk (plaintiff or Yerk) worked with Deputy Jelly at the Lee County Sheriff's Office (LCSO).

PETA then contacted Yerk, and left a telephone message requesting that Yerk provide PETA with a statement so that the abuse tip could be acted upon.  (Doc. #1, ¶7.)  Yerk contacted PETA to discuss the prospect of providing information to PETA which would substantiate Quintana's report.  As a condition of disclosing information to PETA, Yerk demanded confirmation that the information he provided would not be disclosed to his employer and would otherwise remain strictly confidential.  Yerk advised PETA that he would lose his job if his employer was made aware of his disclosures.  PETA agreed to the condition.  (Doc. #1, ¶8.)  On November 4, 2008, PETA violated the confidentiality agreement when one of its caseworkers revealed Yerk's name and/or other identifiable information to the LCSO.  As a result of this disclosure, Yerk's employment with the LCSO was terminated and he suffered other unspecified damages.

Plaintiff's eight-count Complaint (Doc. #1) includes claims for breach of fiduciary duty, constructive fraud, fraudulent misrepresentation, breach of oral contract, negligent misrepresentation, negligence, tortious interference with a contractual relationship, and tortious interference with an

-2-

advantageous business relationship.  Defendant seeks to dismiss all counts.

## II.

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded factual allegations in a complaint as true and take them in the light most favorable to plaintiff.  Erickson v. Pardus, 551 U.S. 89, 94 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002).  "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed."  James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)); see also Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  The Court need not accept as true legal conclusions or mere conclusory statements.  Id.

Dismissal is also warranted under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief.  Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v.

Crawford County, 960 F.2d 1002, 1009-10 (11th Cir. 1992).   The Court may consider documents which are central to plaintiff's claim whose authenticity is not challenged, whether the document is physically attached to the complaint or not, without converting the motion into one for summary judgment.   Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005); Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).   In this case, that does not include the public records to which PETA refers in its motion to dismiss.[1]

### III.

Defendant argues that all eight counts of the Complaint should be dismissed because each fails to state a claim under Fed. R. Civ. P. 12(b)(6).   Plaintiff argues to the contrary on each count. Alternatively, both parties seek summary judgment as to all counts. The Court declines to convert defendant's motion to dismiss to a motion for summary judgment and will decide only whether plaintiff has sufficiently plead the eight counts contained in the Complaint.

---

[1]PETA's reliance upon Christy v. Sheriff of Palm Beach Cnty., 288 Fed. Appx. 658 (11th Cir. 2008) for the proposition that the public records can be considered without converting the motion to dismiss into a summary judgment motion (Doc. #15, p. 6) is misplaced.  Christy held just the opposite, and affirmed the lower court on its alternative ground which had not considered information outside the pleadings.  Id. at 664-65.

**A.  Agreement As Violation of Florida Public Policy**

PETA's overarching argument is that plaintiff's entire Complaint lacks merit because each count is derived from an oral agreement that is void because it is against Florida public policy. It is certainly true that under Florida law an agreement can be void because it is against Florida public policy.  In this case, however, PETA has not established at this stage of the proceedings that the oral agreement was against Florida public policy.

"Public policy or what constitutes public policy is a matter of legislative determination; it is embraced in the Constitution, legislative acts and judicial decision . . ." Davis v. Strine, 191 So. 451, 452 (Fla. 1940).  As the Florida Supreme Court has stated:

> [A]n agreement that is violative of a provision of a constitution or a valid statute, or an agreement which cannot be performed without violating such a constitutional or statutory provision, is illegal and void.  And when a contract or agreement, express or implied, is tainted with the vice of such illegality, no alleged right founded upon the contract or agreement can be enforced in a court of justice.  Where the parties to such an agreement are *in pari delicto* the law will leave them where it finds them; relief will be refused in the courts because of the public interest.  For courts have no right to ignore or set aside a public policy established by the legislature or the people. Indeed, there rests upon the courts the affirmative duty of refusing to sustain that which by the valid statutes of the jurisdiction, or by the constitution, has been declared repugnant to public policy.

Local No. 234 of United Ass'n of Journeymen & Apprentices of Plumbing v. Henley & Beckwith, Inc., 66 So. 2d 818, 821 (1953)(citations omitted).  "The corollary to that principle is

where the parties are not *in pari delicto*, the innocent party may recover." Patterson v. Law Office of Lauri J. Goldstein, P.A., 980 So. 2d 1234, 1237 (Fla. 4th DCA 2008)(citation omitted).  "The right to contract is subject to the general rule that the agreement must be legal and if either its formation or its performance is criminal, tortious or otherwise opposed to public policy, the contract or bargain is illegal. . . . Where a statute imposes a penalty for an act, a contract founded upon said act is considered void in Florida." Thomas v. Ratiner, 462 So. 2d 1157, 1159 (Fla. 3d DCA 1984)(citations omitted).

PETA argues that the "oral contract was clearly void, as the alleged contract was in violation of Fla. Stat. § 828.17 and Fla. Stat. § 839.04 and could not require PETA to violate Fla. Stat. § 837.05 and Fla. Stat. § 843.06 when PETA was questioned about whether any reports of abuse had been made." (Doc. #15, p. 10.) For this reason, PETA asserts, the oral contract is void and plaintiff cannot bring any actions based on it. Id.

The first statute PETA relies upon is Fla. Stat. § 828.17, which provides:

> Any sheriff or any other peace officer of the state, or any police officer of any city or town of the state, shall arrest without warrant any person found violating any of the provisions of ss. 828.08, 828.12, and 828.13-828.16, and the officer making the arrest shall hold the offender until a warrant can be procured, and he or she shall use proper diligence to procure such warrant.

The only relevant offense referred to in this statute is Fla. Stat. § 828.12, which prohibits animal cruelty.  This statute provides in relevant part:

> (1) A person who unnecessarily overloads, overdrives, torments, deprives of necessary sustenance or shelter, or unnecessarily mutilates, or kills any animal, or causes the same to be done, or carries in or upon any vehicle, or otherwise, any animal in a cruel or inhumane manner, is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or by a fine of not more than $5,000, or both.
>
> (2) A person who intentionally commits an act to any animal which results in the cruel death, or excessive or repeated infliction of unnecessary pain or suffering, or causes the same to be done, is guilty of a felony of the third degree, punishable as provided in s. 775.082 or by a fine of not more than $10,000, or both.

Fla. Stat. § 828.12(1),(2).[2]  Nothing in the oral contract would cause Deputy Yerk to violate Fla. Stat. § 828.17.  The oral contract does not refer to or limit Deputy Yerk's ability to arrest anyone for anything, including animal cruelty.  Additionally, there are no allegations in the Complaint that Deputy Yerk, or anyone else, had probable cause to believe Deputy Jelly had engaged in animal cruelty.  PETA's argument that the Complaint "alleges that [Deputy Yerk] possessed information that LCSO Deputy Jelly was engaging in unlawful animal abuse of a canine partner police dog

---

[2]Although not referred to in § 828.17, it is also a violation of Florida law to cause great bodily harm, permanent disability, or death to a police dog, Fla. Stat. § 843.19(2); to maliciously touch, strike or cause bodily harm to a police dog, Fla. Stat. § 843.19(3); or to maliciously harass, tease, interfere with or attempt to interfere with a police dog in the performance of its duties, Fla. Stat. § 843.17(4).

(Complaint ¶¶ 5-7)" (Doc. #15, p. 1) is simply an inaccurate reading of those paragraphs in the Complaint.

The second Florida statute PETA relies upon is Fla. Stat. § 839.04, which provides:

> Any county court judge, clerk of the circuit court, sheriff, tax collector, property appraiser or their deputies, county commissioner, school board members, superintendent of schools, or any other county officer who buys up at a discount, or in any manner, directly or indirectly, speculates in jurors' or witnesses' certificates or in any warrants drawn upon the county treasurer for the payment of money out of any public fund of this state or of any county, shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083, and shall be removed from office.

Fla. Stat. § 839.04.  The Court sees no connection between this statute and any conduct related to this case.

PETA next argues that the oral agreement would require it to violate two Florida statutes, and is therefore void.  The first of these statutes is Florida Statutes § 837.05, which provides in pertinent part:

> (1) Except as provided in subsection (2) [relating to false information concerning a capital felony], whoever knowingly gives false information to any law enforcement officer concerning the alleged commission of any crime, commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

Fla. Stat. § 837.05(1).  This statute does not require PETA to give any information to law enforcement.  The statute provides, rather, that someone who does give information to law enforcement must not knowingly give false information.  Additionally, the statute

requires an "affirmative act of giving false information", i.e., "only when someone lies to a police officer concerning the alleged commission of any crime."  Beizer v. Judge, 743 So. 2d 134, 138 (Fla. 4th DCA 1999)(citing Madiwale v. Savaiko, 117 F.3d 1321, 1326 (11th Cir. 1997)).  Nothing in the statute or the oral agreement precluded PETA from telling the Sheriff's Office the truth[3], i.e., that Mr. Quintana had reported that Deputy Jelly had engaged in animal abuse of his canine partner, that he had provided the name of a corroborating witness, that PETA had spoken with that witness but could not reveal his or her identity or the content of the information provided because PETA had promised the person confidentiality.

The second statute PETA asserts the oral agreement would require it to violate is Fla. Stat. § 843.06, which provides:

> Whoever, being required in the name of the state by any officer of the Florida Highway Patrol, police officer, beverage enforcement agent, or watchman, neglects or refuses to assist him or her in the execution of his or her office in a criminal case, or in the preservation of the peace, or the apprehending or securing of any person for a breach of the peace, or in case of the rescue or escape of a person arrested upon civil process, shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

Fla. Stat. § 843.06.  PETA has cited no Florida case which applies this statute in the context described in the Complaint.  State v.

---

[3]Accepting plaintiff's version of the truth for purposes of a motion to dismiss.

Parish, 509 So. 2d 1365 (Fla. 2d DCA 1987) upheld the

constitutionality of the statute by interpreting it as follows:

> The statute simply provides that whenever an individual
> is asked by an officer, in his official capacity, to
> assist the officer in his official duties (including
> preserving the peace, apprehending or securing a suspect
> or assisting in the rescue or preventing the escape of a
> person arrested for civil process), the individual must
> do so, or he will be guilty of a second degree
> misdemeanor. Simply, one must assist an officer in the
> performance of the officer's duties when asked by the
> officer to do so.

Id. at 1366. Assuming the statute applies in the context of this

case, nothing in it would have precluded PETA from providing the

statement summarized above to law enforcement officers.

PETA also relies upon language in Pokorny v. First Fed. Sav.

& Loan Assoc., 382 So. 2d 678, 682 (Fla. 1980), quoting dicta from

Manis v. Miller, 327 So. 2d 117 (Fla. 2d DCA 1976):

> Prompt and effective law enforcement is directly
> dependent upon the willingness and cooperation of private
> persons to assist law enforcement officers in bringing
> those who violate our criminal laws to justice.
> Unfortunately, too often in the past witnesses and
> victims of criminal offenses have failed to report crimes
> to the proper law enforcement agencies. Private citizens
> should be encouraged to become interested and involved in
> bringing the perpetrators of crime to justice and not
> discouraged under apprehension or fear of recrimination.

Manis, 327 So. 2d at 117. While that sentiment is undoubtedly

true, neither case established any specific Florida public policy

applicable to this case. Rather, Pokorny held that "under Florida

law a private citizen may not be held liable in tort where he

neither actually detained another nor instigated the other's arrest

by law enforcement officers.   If the private citizen makes an honest, good faith mistake in reporting an incident, the mere fact that his communication to an officer may have caused the victim's arrest does not make him liable when he did not in fact request any detention."   382 So. 2d at 682.  Manis held that Florida law does not impose "liability for false imprisonment upon a witness making an honest, good faith mistake in identifying a criminal suspect where the identification contributes to arrest and prosecution of the suspect."  Manis, 327 So. 2d at 118.

The Court finds that on the facts pled in the Complaint, PETA has not established that as a matter of law the oral agreement was contrary to Florida public policy.   Therefore, PETA has not established that the oral agreement was void and unenforceable. The motion to dismiss on this basis is denied.

## B.  Count I: Breach of Fiduciary Duty

The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach.  Minotty v. Baudo, Nos. 4D08-5090, 4D08-5091, 2010 WL 2882460, at *11 (4th DCA 2010)(citing Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002)).  A breach of a fiduciary duty is an intentional tort.  La Costa Beach Club Resort Condo. Ass'n, Inc. v. Carioti, 37 So. 3d 303, 308 (Fla. 4th DCA 2010).

PETA argues that it had no fiduciary relationship with, and therefore no fiduciary duty to, plaintiff based upon the allegations in the Complaint.  A Florida court recently summarized the contours of a fiduciary relationship as follows:

> If a relation of trust and confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused), that is sufficient as a predicate for relief.  Fiduciary relationships may be implied in law and such relationships are premised upon the specific factual situation surrounding the transaction and the relationship of the parties.  Courts have found a fiduciary relation implied in law when confidence is reposed by one party and a trust accepted by the other. To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel and protect the weaker party.

Bingham v. Bingham, 11 So. 3d 374, 387 (Fla. 3d DCA 2009)(internal citations and quotations omitted).  A fiduciary relationship may exist wherever one man trusts in and relies upon another.  See Jacobs v. Vaillancourt, 634 So. 2d 667, 670 (Fla. 2d DCA 1994)("The relations and duties involved need not be legal, but may be moral, social, domestic, and merely personal."); Kaser v. Swann, 141 F.R.D. 337, 341 (M.D. Fla. 1991)("A fiduciary relationship exists when special confidence has been placed with a principal.  The principal must recognize or accept the trust that has been placed with him and he must act in good faith.")(citation omitted); Atlantic Nat'l Bank v. Vest, 480 So. 2d 1328, 1332 (Fla. 2d DCA 1985)("The informal type of fiduciary relationship may exist under

a variety of circumstances, and does exist in cases where there has been a special confidence reposed in one, who in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence.").

The Complaint alleges that there was an oral agreement that plaintiff would provide information to PETA in exchange for PETA's promise to keep the information confidential.  This is sufficient to result in a plausible cause of action for breach of a fiduciary duty.

## C.   Count II: Constructive Fraud

"Constructive fraud occurs when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken.  Constructive fraud may be based on a misrepresentation or concealment, or the fraud may consist of taking an improper advantage of the fiduciary relationship at the expense of the confiding party." Levy v. Levy, 862 So. 2d 48, 53 (Fla. 3d DCA 2003)(citations omitted).  "A constructive fraud is deemed to exist where a duty under a confidential or fiduciary relationship has been abused." Allie v. Ionata, 466 So. 2d 1108, 1110 (Fla. 5th DCA 1985).  Florida courts have recognized that constructive fraud may exist independently of an intent to defraud. Allie, 466 So. 2d at 1110; Linville v. Ginn Real Estate Co., LLC, 697 F. Supp. 2d 1302, 1309 (M.D. Fla. 2010)("Constructive fraud, unlike actual fraud, does not require a showing of intent or of a

misrepresentation or concealment and thus a claim for constructive fraud need only meet the liberal pleading requirements of Rule 8.").

PETA argues this count must be dismissed because it did not have a fiduciary or confidential relationship with plaintiff. For the reasons stated above, the Court has found that such a relationship has been plausibly alleged in the Complaint. PETA also asserts that plaintiff cannot show that PETA fraudulently induced him to enter into a contract. The Court finds that the allegations of the Complaint, assumed to be true and viewed in the light most favorable to plaintiff, plausibly state such a claim. Therefore, the Court finds that plaintiff has sufficiently plead a claim for constructive fraud.

## D. Count III: Fraudulent Misrepresentation

"[T]here are four elements of fraudulent misrepresentation: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." Butler v. Yusem, No. SC09-1508, 2010 WL 3488979, at *3 (Fla. Sept. 8, 2010)(citations and internal quotation omitted). PETA argues that this claim fails because the promise was made as to future conduct, the promise was unenforceable, and could not be justifiably relied upon. First, the enforceability of

the promise was discussed earlier, and the same applies as to this count.  Second, Florida law does not preclude a fraud action where the promise relates to a future act.  See, e.g., Palmer v. Santa Fe Healthcare Sys., Inc., 582 So. 2d 1234, 1236 (Fla. 1st DCA 1991)("A promise as to future conduct may serve as a predicate for a claim of fraud if it is made without any intention of performing, or with the positive intention not to perform."); Stow v. Nat'l Merch. Co. Inc., 610 So. 2d 1378, 1382 (Fla. 1st DCA 1992) (same in fraudulent misrepresentation claim).  Finally, "Justifiable reliance is not a necessary element of fraudulent misrepresentation."  Butler, 2010 WL 3488979 at *3.  Therefore, the motion to dismiss as to this count is denied.

**E.  Count IV: Breach of Oral Contract**

Under Florida law, to state a cause of action for breach of contract the plaintiff must allege: (1) the existence of a valid contract; (2) a material breach of the contract; and (3) damages. See Brooks Tropicals, Inc. v. Acosta, 959 So. 2d 288, 292 (Fla. 3d DCA 2007); Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A., 938 So. 2d 571, 575 (Fla. 4th DCA 2006).  For an oral contract to be valid, plaintiff must allege offer, acceptance and consideration. St. Joe Corp. v. McIver, 875 So. 2d 375, 381 (Fla. 2004).

PETA's argument that the oral agreement violates public policy has been discussed above, and the same holding applies here.  PETA also argues that the contract was without lawful consideration, but

does not further discuss this position.  It has long been the rule
that mutually enforceable promises constitute valid consideration.
Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d
1290, 1311-12 (11th Cir. 1998); Jenkins v. City Ice & Fuel Co., 160
So. 215, 218 (Fla. 1935); Office Pavilion S. Fla. Inc. v. ASAL
Prods., Inc., 849 So. 2d 367, 370 (Fla. 2003).  It is alleged in
the Complaint that plaintiff promised to provide information in
exchange for PETA's promise to  keep the information confidential.
Since PETA cannot establish at this stage of the proceedings that
its promise was unenforceable, valid consideration has been alleged
in the Complaint[4] and the motion to dismiss as to this count will
be denied.

**F.  Count V: Negligent Misrepresentation**

Under Florida law a claim for negligent misrepresentation
requires that: (1) There was a misrepresentation of material fact;
(2) the representer either knew of the misrepresentation, made the

---

[4]Agreements lacking valid consideration are often pled under
promissory estoppel.  See, e.g., Cohen v. Cowles Media Co., 111 S.
Ct. 2513 (1991); see also Prudential Ins. Co. v. Clark, 456 F.2d
932, 936 (5th Cir. 1972) ("[The] purpose of [promissory estoppel]
is to bridge the lack of consideration gap by using detriment of
the promisee to supply the consideration necessary to enforce the
promise."); FCCI Ins. Co. v. Cayce's Excavation, Inc., 901 So. 2d
248, 251 (Fla. 2d DCA 2005)  (To state a cause of action for
promissory estoppel, the plaintiff is required to allege three
elements: "(1) a representation as to a material fact that is
contrary to a later-asserted position; (2) a reasonable reliance on
that representation; and (3) a change in position detrimental to
the party claiming estoppel caused by the representation and
reliance thereon.").  Plaintiff has chosen not to do so in this
case.

misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation.  <u>Baggett v. Elecs. Local 915 Credit Union</u>, 620 So. 2d 784, 786 (Fla. 2d DCA 1993).  With respect to negligent misrepresentation claims, justifiable reliance on the misrepresentation is a required element.  <u>Butler</u>, 2010 WL 3488979 at *3.

PETA asserts that plaintiff could not have justifiably relied on the oral agreement because it was an unenforceable promise.  For the same reasons discussed above, this argument is rejected at this stage of the proceedings.  Thus, the motion to dismiss as to this count is denied.

## G.  Count VI: Negligence

Four elements are necessary to sustain a negligence claim: (1) A duty, or obligation, recognized by the law, requiring defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) A failure on defendant's part to conform to the standard required (a breach of the duty); (3) A reasonably close causal connection between the conduct and the resulting injury ("legal cause" or "proximate cause"), which includes the notion of cause in fact; and (4) Actual loss or damage.  <u>Curd v. Mosaic Fertilizer, LLC</u>, 39 So. 3d 1216, 1227 (Fla.

2010).   PETA argues it had no legal duty to keep the information confidential, but rather had a public policy duty to disclose the information to the LCSO.   For the reasons stated above, this argument is rejected at this stage of the proceedings and the motion to dismiss as to this count is denied.

## H.   Counts VII and VIII: Tortious Interference with a Contractual Business Relationship/Advantageous Business Relationship

The elements of a claim for tortious interference with a contract are: (1) the existence of a contract; (2) defendant's knowledge of this contract; (3) an intentional and unjustified interference with the contract by a third party; and (4) damage to plaintiff as a result of the interference.   Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So. 2d 381, 385 (Fla. 4th DCA 1999)(citing Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985)).   To sufficiently state a claim under tortious interference with an advantageous business relationship, the claimant must plead four elements: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which plaintiff has legal rights; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of the interference.   Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc., 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009).

-18-

    PETA argues that both claims must be dismissed because: (1) the interference must consist of influencing, inducing, or coercing a party to breach a contractual/advantageous relationship, and there is no allegation of such conduct in the Complaint; (2) the interference must be unjustified, which is not alleged in the Complaint because Florida public policy encourages cooperation with law enforcement; and (3) plaintiff was an at-will employee and, as a result, cannot be subject to such claims.

    The Complaint properly alleges all of the required elements, and therefore is not subject to dismissal. Sobi v. Fairfield Resorts, Inc., 846 So. 2d 1204, 1207 (Fla. 5th DCA 2003). First, whether plaintiff can prove that PETA "induced" the breach of plaintiff's employment relationship within the meaning of cases such as Farah v. Canada, 740 So. 2d 560, 561 (Fla. 5th DCA 1999) is not a matter before this court on a motion to dismiss. Second, the Court has already addressed the public policy argument above and the same holding applies here. Third, as a general rule, an action for tortious interference will not lie where a party interferes with an at-will contract, unless the interference is direct and unjustified. Ferris v. S. Fla. Stadium Corp., 926 So. 2d 399, 401 (Fla. 3d DCA 2006). The direct and unjustified conduct, such as fraud, coercion, or other wrongdoing, must be alleged in the complaint. Id. at 402. Here, plaintiff alleges that PETA obtained information from him through a promise of confidentiality, but

later disclosed the information to his employer.  The Court finds these allegations to be sufficient.  Therefore, the motion to dismiss as to this count is denied.

**IV.**

In response to Defendant's Motion to Dismiss, or in the alternative, Motion for Summary Judgment, plaintiff filed a Cross-Motion for Summary Judgment (Doc. #24).

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law.  Id.  The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

Plaintiff has failed to satisfy his burden.  The Court finds that there are multiple material issues of disputed fact which

preclude summary judgment as to any count at this stage of the proceedings.

Accordingly, it is now

**ORDERED**:

1.  Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment (Doc. #15) is **DENIED.**

2.  Plaintiff'S Cross Motion for Summary Judgment (Doc. #24) is **DENIED.**

3.  Plaintiff's Motion to Strike Exhibits (Doc. #28) is **DENIED AS MOOT.**

**DONE AND ORDERED** at Fort Myers, Florida, this __29th__ day of September, 2010.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record

-21-