IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

ROBERT E. TARDIF, JR. AS TRUSTEE     :
FOR JASON YERK,
                                         :
           Plaintiff,               :
                                           :
v.                                               :      Case No. 2:09-cv-00537-JES-SPC
                                              :
PEOPLE FOR THE ETHICAL          :
TREATMENT OF ANIMALS,
a Virginia not-for-profit corporation,      :
                                           :
            Defendant.        :
_____ :

## DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S EXPERT REPORT AND PRECLUDE TESTIMONY OF DR. PETTINGILL

Defendant People for the Ethical Treatment of Animals ("PeTA" or "Defendant"), by and through the undersigned counsel, pursuant to Federal Rule of Civil Procedure 37(c) and Fed. R. Evid. 403 and 702, hereby files its Motion to Strike Plaintiff's Expert Report (Ex. A) and further prohibiting Plaintiff's Expert Bernard Pettingill from testifying at the trial and from his report being admitted into evidence for any purpose. The grounds for this motion are more fully set forth below and in the incorporated Memorandum of Law, as supported by the Notice of Filing Appendix of Supporting Exhibits filed herewith.  As more fully set forth below, this Court should strike Pettingill's Report and preclude his testimony because it wholly fails to meet the admissibility requirements of Fed. R. Evid. 403 and 702 and *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579 (1993) or comply with Federal Rule of Civil Procedure 26(a) and opines on damages not allowable under law:

1.      Pursuant to this Court's Amended Case Management and Scheduling Order (Doc. 73) the Plaintiff was required to disclose his expert report by April 14, 2011. Plaintiff subsequently petitioned the court for additional time to prepare and disclose this expert report alleging he needed critical testimony from a Lee County Sheriff's Office Human Resource Director Heidi Heikkela (Doc. 118).[1]  The Court allowed additional time for Plaintiff's disclosure up to May 18, 2011 (Doc. 120).  Discovery closed May 27, 2011.

2.      Plaintiff served his expert report on May 17, 2011. The report, titled "Present Value Analysis," is immaterial, self-serving, gratuitous, speculative, conclusory and woefully deficient under the Federal Rule of Civil Procedure 26, Fed. R. of Evid. 702, *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579 (1993), and the Court's Case Management and Scheduling Order.  The report (a) does not provide the specific data upon which the analysis is based, (b) does not provide the basis for Pettingill's opinions, (c) failed to include Pettingill's qualifications, publications, other cases in which Pettingill has testified in trial or by deposition, (d) does not provide a statement of compensation owed for Pettingill's assessment and testimony and (e) is not signed. Fed.R.Civ.P. 26(a)(2) and 26(e).  Defendant is materially prejudiced in regard to rebutting the opinion without the required information.

3.      The report has only speculative conclusions which lack any probative value because (a) the analysis for such conclusions is fatally flawed by its reliance on incomplete and independently unverified data and baseless assumptions; and (b) does not

---

[1] Plaintiff filed his motion for an extension on April 14, 2011, one day prior to the deadline for him to file his expert's report stating that he needed to conduct three depositions to obtain unidentified "economic data" pertinent to Jason York's employment with Lee County Sheriff's Office (LCSO).  Plaintiff had 20 months since filing suit to obtain and file an expert report.  LCSO is a public employer and its records are public records.

aid the trier of fact in determining any potential damages for Plaintiff's claims because the analysis provides for damages not allowable under law.

WHEREFORE, in light of the foregoing, and as more fully described below, Defendant requests that this Court grant its Motion to Strike Plaintiff's Expert Witness Disclosure, and, pursuant to Federal Rule of Civil Procedure 26 and 37(c) and Fed. R. Evid. 403 and 702, further prohibit Mr. Pettingill from testifying at the trial in this matter and from his report being used or admitted into evidence for any purpose.

## MEMORANDUM OF LAW

### A.   Brief Statement of Material Facts

This case arises out of allegations made by Jason Yerk ("Yerk") then a Deputy in the K9 Unit for Lee County Sheriff's Office ("LCSO"), and another former deputy to PeTA regarding abuse of a K9 dog.  Based partly on that information, PeTA made an animal abuse complaint to LCSO.  LCSO began an official Internal Affairs investigation into the allegations during which it interviewed several K9 deputies, including Yerk. Yerk testified falsely under oath that he had not spoken to PeTA about the alleged abuse.

That Yerk lied under oath when he denied speaking to PeTA has now been deemed by the Court to be conclusively admitted and established in this case (Doc. 126, p.4) and was clearly admitted in deposition by Jason Yerk when he testified (Ex. B, Yerk Dep. 22:23-23:5).

> Q.     Did you lie under oath to the Lee County Sheriff's Office during the IA investigation?
>
> A.     About?
>
> Q.     Anything?
>
> A.     Speaking to you guys, yes, 'cause it was -- I was told it was confidential.

> Q.     But you lied under oath?
>
> A.     Yes.

On November 20, 2008, Rairden conducted another sworn interview of Yerk (Ex. C at 132-134) in which he admitted speaking to PeTA (Ex. D, Rairden Dep. 66:11-23, 138:19-25; Ex. C at 133-134). Rairden confirmed that Yerk had lied by his own admission (Ex. D, Rairden Dep. 153:5-10, 154:1-22). An IA investigation (IA-2008-044, contained in Ex. C at 68-138) was then opened on November 20, 2008 for Yerk's untruthfulness (Ex. C at 73, 79), and an interview of Yerk with Lt. Trusal was scheduled for November 26, 2008 (Ex. C at 93-138). Yerk appeared and reviewed the investigative file (Ex. C at 93-95). Mr. Braverman, Yerk's attorney, appeared and was advised about the complaint and interviews (Ex. C at 95-134; Ex. E, Trusal Dep. 31:13-16). Braverman and Yerk then left to discuss the matter (Ex. C at 134-135). When one hour transpired, Lt. Trusal tried to call Braverman (Ex. C at 135). Braverman and Yerk reappeared with a resignation letter from Yerk (Ex. C at 136-138) which they confirmed was of his own "free will" (Ex. C at 136; Ex. E, Trusal Dep. 31:18-24).

Yerk has admitted that he was **not** told that if he did not resign he was going to be fired (Ex. B, Yerk Dep. 223; Ex. E, Trusal Dep. 31:25-32:6). He left the LCSO interview meeting with Mr. Braverman, his attorney, and typed up his resignation letter (Ex. B, Yerk Dep. 223) and then voluntarily turned in the resignation letter (Ex. C at 67) and no one at LCSO knew it was coming (Ex. B, Yerk Dep. 222; Ex. E, Trusal Dep. 32:11-33:21).

Plaintiff alleges that PeTA violated a confidentiality agreement by revealing Yerk's name to LCSO and that Yerk was damaged by his resignation from LCSO (Complaint ¶¶ 8 & 9). However, nothing excuses Yerk's perjury and it was his perjury

4

that led to his resignation.  Plaintiff brings a claim for breach of contract (Count IV) and then repleads the same claim under seven different theories: breach of fiduciary duty; constructive fraud; fraudulent misrepresentation; breach of oral contract; negligent misrepresentation; negligence; tortious interference with a contractual relationship; and tortious interference with an advantageous business relationship (Complaint).  Each count alleges identical damages with the same "Wherefore" clause.

Pursuant to this Court's Amended Case Management and Scheduling Order (Doc. 73) the Plaintiff was required to disclose his expert report by April 14, 2011. Plaintiff subsequently petitioned the court for additional time to prepare and disclose this expert report alleging he needed critical testimony from Lee County Sheriff's Office Human Resource representatives. (Doc. 118) The court allowed additional time for Plaintiff's disclosure up to May 18, 2011. (Doc. 120) Plaintiff served his expert report prepared by Bernard Pettingill, Jr., Ph.D. ("Pettingill") on May 17, 2011 (Ex. A).

Pettingill's report is completely deficient under the Federal and Local Rules, is not probative of any fact in issue and provides for damages not allowable under Florida law.  The report is entitled "The Present Value Analysis of the Loss of Back Pay and Front Pay of Jason Yerk."  The report discusses "the economic loss" which is "the present value of the funds needed to finance the loss of back pay and front pay resulting from [Yerk's] constructive termination" (Ex. A at 1).  Thus, the report is based upon the assumption that Yerk was "constructively discharged" by Lee County Sheriff's Office (LCSO) and seeks to calculate pay as a result of LCSO's constructive discharge of Yerk. As a result of Yerk's lie and voluntary resignation, Pettingill opines that he lost $1,676,700, composed mostly of front pay to Yerk over the next 22 years and then LCSO

retirement benefits for another 20 years.  The report thus opines that $1,676,700 in funds

(present value) is needed "to compensate" Yerk for pay losses so Yerk will be a

millionaire as a result of his admitted lies and resignation.  There is nothing in the report

suggesting that Yerk suffers from any impairment or loss of earning capacity nor is there

any information regarding the relevant labor market.

**B.**     **Pettingill's Expert Report Is Deficient under the Federal Rules**

The Court's Amended Case Management and Scheduling Order (Doc. 73)

provides "Disclosure of Expert Testimony – On or before the date set forth in the above

table for the disclosure of expert reports, the party shall fully comply with *Fed.R.Civ.P.*

*26(a)(2) and 26(e).*  Failure to disclose such information may result in the exclusion of all

or part of the testimony of the expert witness." *Case Management and Scheduling Order*

*I (D) Discovery Deadline.*  Rule 26(a)(2), *Federal Rules of Civil Procedure "Disclosure*

*of Expert Testimony,*" provides, in relevant part:

> (A)  *In General.*  In addition to the disclosures required by
> Rule 26(a)(1), a party must disclose to the other parties the
> identity of any witness it may use at trial to present
> evidence under Federal Rules of Evidence 702, 703, or 705.

> (B)  *Written Report.*  Unless otherwise stipulated or ordered
> by the court, this disclosure must be accompanied by a
> written report – prepared and **signed** by the witness – if the
> witness is one retained or specially employed to provide
> expert testimony in the case or one whose duties as the
> party's employee regularly involve giving expert
> testimony.  The report must contain:

>> (i)  a complete statement of all opinions the witness
>> will express and **the basis and reasons for them**;

>> (ii)  the **data** or other information considered by the
>> witness in forming them;

>> (iii)  any exhibits that will be used to summarize or
>> support them;

(iv)  **the witness's qualifications, including a list of all publications authored in the previous 10 years;**

(v)  **a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition;** and

(vi)  **a statement of the compensation to be paid for the study and testimony in the case.**

(C)  *Time to Disclose Expert Testimony.*  A party **must make these disclosures at the time** and in the sequence **that the court orders.**

Fed. R. Civ. P. Rule 26(a)(2).

Plaintiff's expert report is remarkably deficient and fails to satisfy the requirements set forth by Federal Rule of Civil Procedure 26(a)(2), 26(e)(2). Specifically, the report does not contain (a) the specific facts or data considered by Pettingill in forming his opinions; (b) a complete statement of the basis for Pettingill's opinions; (c) Pettingill's qualifications, including a list of all publications authored in the previous 10 years, (d) a list of all other cases in which, during the previous four years, Pettingill testified as an expert at trial or by deposition; or (e) a statement of the compensation to be paid for the study and testimony in this case. Fed. R. Civ. P. 26(a)(2)(B)(i) – (vi).  Furthermore, the report is not signed by Pettingill.

Plaintiff's utter failure to follow the Federal Court Rules flies in the face of the Rules and warrants excluding Pettingill's report and any testimony at trial:

1.     The report contains no qualifications of the witness.  *See Pomales v. Bridgestone Firestone*, 217 F.R.D. 290 (D.P.R. 2003) (failure to include curriculum vitae **with report** required striking the expert testimony) (emphasis added).  Qualifications

were provided late on June 15, 2011.  However, the fact that the qualifications were not provided as ordered reflects the complete lack of any attempt to comply with the Rules and the argument that Defendant merely needed to request the qualifications has been rejected.  *Pomales, supra.*  Because production had been "specifically ordered by the court," sanctions are automatic, there is no need or duty to request, and it is an essential disclosure.  *Pomales, supra.*  Moreover, the deficiencies go far beyond this item.

2.     The report does not list the other cases the witness has testified in or provide the expert's compensation.  *See Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de P.R.*, 248 F.3d 29 (1st Cir. 2001) (upholding the exclusion of expert testimony as a sanction for plaintiff's withholding information regarding cases in which their expert witness has previously testified until one day after hearing on motion). A list of cases (but not a statement of compensation) was provided on June 15, 2011, but the late disclosure does not change the fact that the "deficient expert report flies in the face of the purpose of the mandatory expert disclosure requirements." *Ortiz-Lopez, supra.*

3.     Importantly, as discussed below, the report fails to disclose a basis for the opinion and supporting data and is lacking in virtually all respects.  *U.S. v. Batchelor-Robjohns*, 95 A.F.T.R. 2d 3001 (S.D. Fla. 2005) (excluding the expert witness's report and any testimony which relied upon the expert's opinion because the expert failed to disclose the basis for the expert's opinion); *Dunkin' Donuts, Inc. v. Patel*, 174 F. Supp. 2d 202 (D.N.J. 2001) (excluding the expert reports because the certification and memorandum failed to satisfy the requirements of Rule 26(a)(2)(B) in that the documents did not set forth the expert's basis and reasons for opinions, but relied on observations

made by others, and documents failed to list all publications authored by expert over past

10 years, did not indicate his compensation for his study and/or testimony, did not list

any other cases in which expert testified within past 4 years, were not supported by any

treatises or authoritative documents, contained no exhibits, and lacked expert's

signature).

Courts have routinely held that such utter lack of respect for the Rules of Federal

Procedure and court's orders are sanctionable. "Failure to make required disclosures

[pursuant to Rule 26(a)(2)] without substantial justification is sanctionable under Rule

37(c)(1)." *Hallmark Developers, Inc. v. Fulton County*, 2004 U.S. Dist. LEXIS 30616,

*17, Case No. 1:02-cv-01862-ODE (N.D. Ga. September 27, 2004). Rule 37(c)(1)

provides the following:

> If a party fails to provide information or identify a witness as
> required by Rule 26(a) or (e), the party is not allowed to use that
> information or witness to supply evidence on a motion, at a
> hearing, or at trial, unless the failure was substantially justified or
> is harmless.

"Generally, the sanction of exclusion is automatic and mandatory unless the party

to be sanctioned can show that its violation of Rule 26(a) was either justified or

harmless." *Continental Lab. Prods., Inc. v. Medax Int'l, Inc.*, 195 F.R.D. 675, 676 (S.D.

Cal. 2000); *see also Barron v. Federal Reserve Bank of Atlanta*, 129 Fed. Appx. 512

(11th Cir. 2005) (recognizing that Rule 37(c) is a "self-executing sanction" for a party's

failure to make a disclosure).  The "sanction is automatic in the sense that there is no

need for the opposing party to make a motion to compel disclosure" nor to request the

missing information.  *Pomales, supra.*  Plaintiff cannot show that the numerous

deficiencies here which fly in the face of the Rules were "substantially justified" and they

certainly were not "harmless" because Plaintiff has deprived Defendant of essential information as to Pettingill's background, possible biases, data and analysis and of the opportunity to present the information to and use in preparation with Defendant's expert.

Pettingill's report speculates that Yerk was "**accustomed** to receiving a 3.0% to 7.0% growth in wages each year," but fails to provide any actual facts, statistics or the basis upon which those numbers are based (emphasis added). Pettingill also simply provides his speculative opinion that despite Yerk's admitted lies under oath to LCSO, he would receive 20 years of additional pay since Yerk "**intended** to remain with the Sheriff's Office to full retirement; he would continue as a K-9 officer for an additional ten years, then **expect** promotion to Sergeant (1.0-2.0 years) and then to Lieutenant, which **may have been** the latitudinal raises **expected**" (Exhibit A, Para. 1.3). Pettingill does not provide any of the basis, documents, statistics or any data whatsoever upon which these purely speculative opinions are based. The report states that Pettingill interviewed Yerk but does not disclose the substance of the interview as required. *See Bray & Gilliespie Mgmt LLC v. Lexington Insurance Co.*, 2009 U.S. Dist. LEXIS 36246 (M.D. Fla. 2009) (striking expert report for failure to disclose the substance of interviews).

Pettingill's report does not include the substance of the facts upon which Pettingill's opinions as to his final numbers are based and upon which he is expected to testify, nor do they include the data and basis for each opinion. Pettingill provides only final numbers and a chart with an incomprehensible list of numbers on the bottom half where he simply plugged in those same final numbers without any calculations, data, specific economic statistics used (except for general references to documents such as

"Economic Report of the President," "Expenditures on Children by Families" (which clearly has nothing to do with this case), and "Wall Street Journal (recently selected issues)."

The report reflects that Yerk was not assessed by a vocational rehabilitation specialist,[2] while opining on "front pay" losses for decades into the future.  The report concludes that Yerk could earn only $27,000 annually, but there is no supporting information for this figure.  It says the source of the $27,000 figure is "ibid." which, of course, is used to reference a source that was cited in the preceding source reference.  The preceding source was the Florida Retirement System (which could not predict Yerk's future income) and the source prior to that was Yerk's income tax returns, check records and wage statements (which are shown in Ex. A, Section II to be for 2004-2008 when Yerk worked for LCSO) and an interview of Yerk.  The report also indicates that it "may be revised" upon receipt of additional requested documentation regarding Plaintiff's sick leave and vacation hours that would have been available to Yerk and information regarding the DROP plan (Exhibit A, Para 1.5).

The report says that Yerk "continues to further his education" and that the $27,000 figure is based on Yerk being a "two-year Associate degree graduate."  The report shows that Pettingill failed to review Yerk's deposition where Yerk testified that he already had the Associate degree, along with police academy graduation and was "just about done" with a bachelor's degree (Ex. B, Yerk Dep. at 10).  Also, the report shows that Pettingill failed to review Yerk's interrogatory answers.  Pettingill suggests that while Yerk remains a certified law enforcement officer (Ex. A, Section II at 10), that in

---

[2] The report says Yerk "may be" assessed by a vocational rehabilitation specialist – however, the time for Plaintiff's expert disclosure is over.

the last 2 ½ years (since 11/08) he unsuccessfully applied at 4 police departments, a state

agency, and security company – however, Yerk's deposition (Ex. B, Yerk Dep. at 17) and

Court Compelled Interrogatory Answer (Ex. F) swear that Yerk applied to only one

police department, a state agency, and security company.   This equals about one

application per year and there is no information whatsoever that serves as a basis for the

report or to limit Yerk to a non-law enforcement job.   The report contains no information

about the relevant labor market or available opportunities that would limit Yerk to

$27,000 annually.   Clearly, the report provides no basis whatsoever for Yerk's future

income and for calculating a "FUTURE LOSS" of $1,567,086.

## C.   Threshold Standard For Admissibility Of Expert Reports

In *Daubert*, the Supreme Court held that, to be admissible, scientific expert

testimony must be both relevant and reliable.   *See Daubert*, 509 U.S. at 597, 113 S. Ct. at

2799.   In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d

238 (1999), the Supreme Court held that *Daubert* applies, <u>not</u> only to scientific experts,

but to <u>all</u> expert testimony.   Under *Daubert* and *Kumho Tire*, this Court is to function as a

gatekeeper, allowing only proper expert testimony before the jury. The Eleventh Circuit,

in *City of Tuscaloosa v. Harcros Chem., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998), stated

that expert testimony is admissible when:

> (1) the expert is qualified to testify competently regarding
> the matters he intends to address; (2) the methodology by
> which the expert reaches his conclusions is sufficiently
> reliable as determined by the sort of inquiry mandated in
> *Daubert*, and (3) the testimony assists the trier of fact,
> through the application of scientific, technical, or
> specialized expertise, to understand the evidence or to
> determine a fact in issue.

*Id.*; *see also Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1309 (11th Cir. 1999).

Fed. R. Civ. P. 56(e).  Regarding the admissibility of expert testimony, the Federal Rule

of Evidence 702 requires that where

> "scientific, technical, or other specialized knowledge will
> assist the trier of fact to understand the evidence or to
> determine a fact in issue, a witness qualified as an expert by
> knowledge, skill, experience, training, or education, may
> testify thereto in the form of an opinion or otherwise, if (1)
> the testimony is based upon sufficient facts or data, (2) the
> testimony is the product of reliable principles and methods,
> and (3) the witness has applied the principles and methods
> reliably to the facts of the case."  Fed. R. Civ. P. 702.

*See United States v. City of Miami*, 115 F.3d 870, 873 (11th Cir. 1997) ("Relevant expert

testimony is admissible only if an expert knows of facts which enable him to express a

reasonably accurate conclusion."); *see also Washington v. Vogel*, 880 F. Supp. 1545

(M.D. Fla. 1995) (excluding plaintiff's statistical evidence because it did not rest on a

reliable foundation); *Contractors Ass'n v. City of Philadelphia*, 893 F. Supp. 419, 437

(E.D. Pa. 1995) (excluding statistical study where expert never attempted to validate

information provided to him by his client).  *See Sheehan v. Daily Racing Forum, Inc.*,

104 F.3d 940, 942 (7th Cir. 1997) (holding that statistical evidence which failed to

account for explanatory variables and lumped different job categories together for

analysis were flawed and should not be afforded any weight).

Expert testimony must be relevant to be admissible. *Daubert*, 113 S.Ct. at 2795.

Here, Pettingill's opinion that Yerk's damages consist of back pay and front pay is

deficient and wholly irrelevant to Yerk's claims.

### 1.    The Report is Insufficient Under Fed. R. Evid. 702

In *McNamara v. Kmart Corp.*, 380 Fed. Appx. 148, 153 (3d Cir. 2010), the court

affirmed the exclusion of expert testimony of future loss of income in similar

circumstances.  There, the plaintiff actually suffered an injury (back injury), unlike Yerk.

The plaintiff utilized a vocational rehabilitation expert (McKenzie) but, like here, her report was deficient:

> McKenzie's report did not include any information about other employment opportunities that might be available to someone with McNamara's skills and limitations or about the relevant labor market. Because there was no basis in her report for any opinion on the amounts, if any, of McNamara's future loss of income and loss of capacity to earn income, McKenzie's testimony on those subjects was properly excluded under Rule 702.

The report here purports to conclude that Yerk will suffer millions of dollars in loss of future income over several decades despite having no loss of capacity to earn income. The report limits Yerk's future income to $27,000 annually but includes no information about the relevant labor market or opportunities available to Yerk to support such a limitation. Yerk remains fully certified for law enforcement and detective duties and is furthering his education and near completion of a Bachelor's degree after resigning from LCSO. Notably, the report does not even consider usage of Yerk's multiple law enforcement certifications and licenses, nor offer any explanation as to why Yerk, with those certifications and Bachelor's degree, could not have similar earnings to LCSO, nor offer any basis for the conclusion that Yerk, as a result of an alleged "constructive discharge" which in reality was a voluntary resignation, could only earn $27,000 over the next 20 years. The report is insufficient under Fed. R. Evid. 702 and should be stricken and the testimony of Dr. Pettingill precluded.

In *Henson v. Odyssea Vessels, Inc.*, 2008 U.S. Dist. LEXIS 12026 (E.D. La. 2008), the court excluded the testimony of Dr. Pettingill under Fed. R. Evid. 702 where his economic model was based on a report of a vocational rehabilitation counsel as to an earning capacity per year figure which had been set forth without any basis for reason.

Here, Pettingill's future earning capacity calculation is based on even less – on nothing whatsoever.

Indeed, the only possible cited source for the figure was the interview of Yerk who had admittedly, and has been held by the Court to be conclusively established to have, lied under oath. The substance of the interview is missing, which warrants striking the report. *Bray & Gilliespie, supra.* In *Benjamin v. Peter's Farm Condominium Owners Assoc.*, 820 F.2d 640 (3d Cir. 1987), the court properly struck the expert's testimony on lost future earnings which used a future earnings value of $10,000 per year based on a review of plaintiff's tax return and various records and an interview of plaintiff. The court found that the expert's opinion was "a castle made of sand" that was not accompanied by evidence that plaintiff could expect to earn only $10,000 per year. The witness was not a vocational rehabilitation specialist and was not qualified to calculate future earning capacity and reliance on plaintiff's interview was speculative.

## 2.     Pettingill's Opinions Are Wholly Irrelevant

Pettingill's report reflects no loss of earning capacity and provides a supposed assessment of Yerk's "loss of front pay…based on the differential between what Mr. Yerk would have earned, as demonstrated from the records reviewed (including tax returns and wage statements), and what he may be able to earn in the open labor market as a two-year Associate degree graduate" (Exhibit A, Para. 1.4). Pettingill's assessment has no bearing on the type of damages to which Yerk might be entitled *if* he could prove PeTA's liability and consists of speculation and conjecture about the next 40+ years as to a plaintiff (Yerk) fully capable and licensed to work.[3]

---

[3] This is of course in addition to the fact that Pettingill fails to identify and provide the actual data or charts upon which his opinions are based. Pettingill's assessment of Yerk's potential income with an Associates

**a)      "Front Pay" Is Not a Proper Element of Damages**

Pettingill's report outlines his assessment of "the present value of funds needed to finance the loss of back pay and front pay resulting from [Yerk's] constructive termination" (Exhibit A, Para. 1.2).  The report purports to calculate "front pay" which is awardable against an **employer** "to a plaintiff who has been wrongfully discharged or forced to stop working."  *See Vance v. Southern Bell T&T Co.*, 863 F.2d 1503, 1516 (11th Cir. 1989) (affirming finding that front pay award was grossly excessive where plaintiff was, as here, fully capable of working and leading a normal life), *aff'g* 672 F. Supp. 1408, 1416 (M.D. Fla. 1987) ("Because it is a short-term alternative, front pay is computed on the basis of a few months or years . . . .").  *See also Quitto v. Bay Colony Golf Club*, 2007 U.S. Dist. LEXIS 84624 (M.D. Fla. 2007) (front pay is equitable relief where there are extenuating circumstances such as discord and antagonism with employer which precludes reinstatement).  The report here calculates "front pay" – however, (1) PeTA was not Yerk's employer, (2) PeTA did not wrongfully terminate anyone, (3) Yerk voluntarily resigned, and (4) the calculation is not short-term but rather seeks to calculate loss of earnings for nearly one-half century.

**b)      There Is No Evidence of Any Constructive Discharge**

It should be noted that the report does not suggest that PeTA caused any constructive termination.  Yerk quit his employment with Lee County Sheriff's Office after admittedly lying under oath and becoming the subject of an Internal Affairs investigation into his untruthfulness.  (See Exhibit C at 67, Yerk's resignation letter; see Exhibit C at 69-72, Internal Affairs Report for "untruthfulness.")  This was clearly a

---

degree (with no benefits) further seems to ignore that fact that Yerk is currently actively obtaining his Bachelor's degree as indicated in the report.

voluntary resignation. *Ross v. City of Perry*, 396 Fed. Appx. 668 (11th Cir. 2010); *Hargray v. City of Hallandale*, 57 F.3d 1560 (11th Cir. 1995); *Slattery v. Neumann*, 200 F. Supp. 2d 1367 (S.D. Fla. 2002). To establish constructive discharge, Yerk must demonstrate, under an objective standard, that the employer through illegal discrimination made working conditions so difficult that a reasonable person in his or her position would feel compelled to resign. *McCaw Cellular Com. of Florida, Inc. v. Roger P. Kwiatek, Jr.*, 763 So. 2d 1063 (Fla. 4th DCA 1999); *Vazquez v. City of Hialeah Gardens*, 874 So. 2d 626 (Fla. 3rd DCA 2004); *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317 (11th Cir. 1989). PeTA did not employ Yerk. Yerk could only assert a claim of constructive discharge against LCSO, if against any entity, and if LCSO constructively discharged Yerk (which it did not), this would not be attrituable to PeTA. Certainly PeTA, who was not Yerk's employer, cannot be liable for Yerk's voluntary resignation.

### c)    No Loss of Earning Capacity

Even for plaintiffs who are truly injured (which Yerk was not), Florida law does not recognize a claim for future loss of earnings but does recognize a claim for loss of earning capacity. *Truelove v. Blount,* 954 So. 2d 1284, 1287 (Fla. 2d DCA 2007); *W.R. Grace & Company-Conn. v. Pyke,* 661 So. 2d 1301, 1303-04 (Fla. 3d DCA 1995) (reversing a jury verdict for future damages that were characterized as loss of earnings; **"Florida law does not recognize a claim for future loss of earnings.  Under Florida law, the only future damages available relative to income are damages for loss of earning capacity"**); *Miami –Dade County v. Cardoso,* 963 So. 2d 825, 827 (Fla. 3d DCA 2007) ("The purpose of a jury's award of future economic damages is to compensate a plaintiff for the loss of capacity to earn income as opposed to actual loss of

future earnings."), *citing Fla. Greyhound Lines, Inc. v. Jones,* 60 So. 2d 396, 398 (Fla. 1952) (holding that the jury was not to be concerned with the actual future loss of earnings, but with the loss of the power to earn).

Plaintiff provides no evidence of any impairment that diminishes his earning *capacity. W.R. Grace & Company-Conn. V. Pyke,* 661 So. 2d at 1302 ("Once sufficient evidence is presented, the measure of damages is the loss of capacity to earn *by virtue of any impairment* found by the jury…"; emphasis added); *Allstate Ins. Co. v. Shilling,* 374 So. 2d 611, 612 (Fla. 4th DCA 1979) (holding that a loss of earning capacity is measured by the plaintiff's diminished *ability* to earn money in the future.)(*emphasis added*). Pettingill simply makes a conclusory assumption that Yerk will earn less as a result of his resignation despite remaining certified as a police officer plus having an additional educational degree and continued educational advancement (Exhibit A, Para. 1.2). Pettingill's report does not provide the basis for any "expert opinion" that Yerk has any loss of *capacity* to earn money. In fact, Pettingill's report contains no "expert opinion" at all that would assist this jury in its determinations regarding damages. Pettingill simply provides conclusory and speculative allegations that Yerk's "front pay" is and will continue to be less than what he was making at LCSO.

Pettingill's report not only fails to consider the correct damages that *could* be recoverable, but also fails to provide any facts or basis upon which a jury could reasonably assess those claimed damages. "A plaintiff must demonstrate not only reasonable certainty of injury, but must present evidence which will allow a jury to reasonably calculate lost earning capacity." *Pruitt v. Perez-Gervert*, 41 So. 3d 286 (Fla. 2d DCA 2010). *See also Truelove v. Blount,* 954 So. 2d at 1287 (finding that evidence of

a 10% permanent disability was insufficient because there was no basis upon which the jury could reasonably assess or calculate loss of earning capacity which was reasonably certain to occur); *Miami –Dade County v. Cardoso,* 963 So. 2d 825, 828 (Fla. 3d DCA 2007)("Before a plaintiff may be entitled to an award for loss of earning capacity, he or she must present sufficient evidence 'which will allow a jury to reasonably calculate lost earning capacity.'"), *quoting W.R. Grace & Company-Conn. v. Pyke,* 661 So. 2d 1301, 1302; *Auto-Owners Ins. Co. v. Tompkins,* 651 So. 2d 89, 91 (Fla. 1995) (finding that the test for recovery of future loss of earning capacity requires such damages to be established with reasonable certainty.  "Although a permanent injury is not a prerequisite to recovering future economic damages, it is a significant factor in establishing the reasonable certainty of the future damages."); *W.R. Grace & Company-Conn. V. Pyke,* 661 So. 2d at 1303 (reversing a jury verdict for future economic damages where plaintiff provided no expert or lay testimony regarding his loss of earning capacity, no testimony regarding the relevant employment market, and no evidence that he suffered any economic loss due to Plaintiff's injury. "A plaintiff is entitled to an instruction on loss of ability to earn money in the future where there is evidence of an injury and evidence which is sufficiently detailed to allow the trier of fact to quantify the loss of earning capacity.").  The court must consider, among other things, "[w]hether the trier of fact took improper elements of damages into account or arrived at the amount of damages by speculation or conjecture.'" *Truelove v. Blount,* 954 So. 2d at 1287 (Fla. 2nd DCA 2007) (Court reversed the jury verdict for future loss of earning capacity where the plaintiff failed to present any evidence of his post incident earning *capacity.* "Before a plaintiff may be entitled to an award for loss of earning capacity, he or she must present sufficient

evidence 'which will allow a jury to reasonably calculate lost earning capacity." *Miami –*
*Dade County v. Cardoso,* 963 So. 2d at 828 *quoting W.R. Grace & Company-Conn. V.*
*Pyke,* 661 So. 2d 1301, 1302.

Pettingill's report provides absolutely no basis whatsoever for the jury to
reasonably conclude that Yerk has any reasonable certainty of future loss of earning
capacity.  Accordingly, Pettingill's report provides no basis upon which a jury could
reasonably find an impairment of Yerk's future earning capacity and is therefore not
probative of any fact in issue and does not meet the *Daubert* standard of admissibility.
Plaintiff should not be allowed to present any evidence from his purely speculative expert
report.

## LOCAL RULE 3.01(g) CERTIFICATION

Defendant's counsel certifies that she has conferred with Plaintiff's counsel in a
good faith effort to resolve issues raised by the motion and counsel were unable to agree
on resolution of the motion.

Respectfully submitted,

By:     s/ Shannon L. Kelly
        Robert D. Hall, Jr.
        Florida Bar No. 186760
        rhall@fordharrison.com
        Shannon L. Kelly
        Florida Bar No. 646830
        skelly@fordharrison.com
        FORD & HARRISON LLP
        101 E. Kennedy Boulevard
        Suite 900
        Tampa, Florida 33602
        Telephone:  (813) 261-7800
        Facsimile:  (813) 261-7899

Philip J. Hirschkop
Virginia Bar No. 04929
pjhirschkop@aol.com
HIRSCHKOP & ASSOCIATES, P.C.
908 King Street, Suite 200
Alexandria, Virginia  22314-3047
Telephone:  (703) 836-5555
Facsimile:   (703) 548-3181

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 16, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to:

Jose Font
Evan A. Zuckerman
Vernis & Bowling of Broward, P.A.
First Floor
5821 Hollywood Blvd.
Hollywood , FL 33021


s/ Shannon L. Kelly
Attorney

TAMPA:304760.1