UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT E. TARDIF, JR., as Trustee
for Jason Yerk,

                    Plaintiff,

vs.                                   Case No.  2:09-cv-537-FtM-29SPC

PEOPLE for the ETHICAL TREATMENT of
ANIMALS, a Virginia not-for-profit
corporation,

                    Defendant.
_____


**OPINION AND ORDER**

        This matter comes before the Court on the parties' cross

motions for summary judgment.  Defendant filed its Dispositive

Motion for Summary Judgment (Doc. #135) on June 19, 2011 and

plaintiff filed his Partial Motion for Summary Judgment (Doc. #139)

on June 20, 2011.  Both parties filed their respective responses

(Docs. ##145, 146) on July 5, 2011.  The Court heard oral argument

on some of the issues at the final pretrial conference on October

24, 2011.

**I.  Summary Judgment Standard**

        Summary judgment is appropriate only when the Court is

satisfied that "there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of

law."   Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is

sufficient evidence such that a reasonable jury could return a

verdict for either party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477
U.S. 242, 248 (1986).  A fact is "material" if it may affect the
outcome of the suit under governing law.  <u>Id.</u>  However, "the mere
existence of some factual dispute will not defeat summary judgment
unless the factual dispute is material to an issue affecting the
outcome o f the case."  <u>McCormick v. City of Fort Lauderdale</u>, 333
F.3d 1234, 1243 (11th Cir. 2003).  In ruling on a motion for
summary judgment, the Court is required to consider the evidence in
the light most favorable to the nonmoving party.  <u>Johnson v. Booker
T. Washington Broad. Servs., Inc.</u>, 234 F.3d 501, 507 (11th Cir.
2000); <u>Jaques v. Kendrick</u>, 43 F.3d 628, 630 (11th Cir. 1995).  The
Court does not weigh conflicting evidence or make credibility
determinations.  <u>Hilburn v. Murata Elecs. N. Am., Inc.</u>, 181 F.3d at
1225.

## II.  Complaint

Plaintiff's eight-count Complaint (Doc. #1) in essence asserts
that People for the Ethical Treatment of Animals (defendant or
PETA) made an oral promise of confidentiality to Jason Yerk (Yerk)
in exchange for information; that Yerk provided the information in
reliance upon the promise of confidentiality, but PETA breached the
confidentiality promise by disclosing information to his employer,
the Lee County Sheriff's Office (LCSO); as a result of PETA's
disclosure, Yerk was forced to resign from his employment; and
because of the forced resignation PETA is liable for the resulting

employment-related damages.   At the final status conference, counsel for plaintiff clarified the terms of the alleged confidentiality agreement.   Counsel stated that PETA and Yerk agreed that Yerk would reveal his knowledge of animal abuse to PETA and, in exchange, PETA would not reveal Yerk's identity as the source of that information; disclosure of the substance of the animal abuse reported by Yerk and disclosure of Yerk's identity as a witness to the abuse were not precluded by the confidentiality agreement.   Only Yerk's identity as the source of the information was to be confidential.

With this refinement, the Complaint alleges the following causes of action:   Count I alleges a breach of fiduciary duty, asserting that PETA and Yerk had a fiduciary relationship in which Yerk confided information to PETA in exchange for PETA's promise of confidentiality, that PETA's disclosure to the LCSO of Yerk's identity as a source of information breached that fiduciary relationship, and the breach caused damages.   Count II alleges constructive fraud, asserting that PETA and Yerk had the fiduciary relationship described above, that PETA abused this confidential relationship by disclosing Yerk's identity as a source of information and the abuse caused damages.   Count III alleges fraudulent misrepresentation, asserting that PETA misrepresented to Yerk that his identity as a source of information would be kept confidential, that PETA should have known the confidentiality

statement was false, that Yerk relied upon the misrepresentation, and that damages resulted to Yerk.  Count IV alleges breach of oral contract, asserting that PETA and Yerk entered into an oral contract in which Yerk agreed to provide information to PETA in exchange for PETA's promise that it would not disclose to the LCSO that Yerk was a source of information, that PETA breached this contract, and that damages resulted.  Count V alleges negligent misrepresentation, asserting that PETA misrepresented to Yerk that his identity as a source of information would be kept confidential, that PETA should have known the confidentiality statement was false, that PETA intended Yerk to rely upon the statement and Yerk reasonably and justifiably did so, and that damages resulted. Count VI alleges negligence, asserting that PETA voluntarily assumed a duty to not reveal Yerk's identity as a source of information to the LCSO, that PETA breached the duty by revealing Yerk's identity, and that as a proximate cause Yerk sustained damages.  Count VIII[1] alleges tortious interference with an advantageous business relationship,  asserting that Yerk and the LCSO had an advantageous business relationship under which Yerk had the right to receive compensation in return for services, that PETA knew of this business relationship, and that PETA's disclosure of Yerk's identity as a source of information was an intentional and

_____

[1]At the final pretrial conference, plaintiff's counsel withdrew Count VII, intentional interference with a contract relationship.  Therefore this count will be dismissed.

unjustified interference with the business relationship which resulted in damages. The damages asserted as to all counts include lost wages and benefits, lost future earning capacity, and mental anguish and suffering.

## III.  Plaintiff's Motion for Partial Summary Judgment (Doc. #139)

As permitted by Fed. R. Civ. P. 56(a), plaintiff moves for summary judgment on "parts" of his claims. Plaintiff seeks summary judgment that "PETA entered into a confidentiality agreement with Jason Yerk whereby PETA, in exchange for information Yerk had regarding suspected animal abuse being committed by Deputy Jelly, agreed to maintain Yerk's identity completely anonymous as a witness that had contacted PETA to report suspected animal abuse" (Doc. #139, p. 23); that PETA intentionally breached the confidentiality agreement by disclosing Yerk's identity to his employer, and that PETA knew Yerk would be subject to reprisals. (Id. at 23-24).

In October 2008, Guillermo Quintana (Quintana), a former deputy for the LCSO, reported to PETA that Lee County Sheriff's Deputy Travis Jelly (Deputy Jelly) was engaging in animal abuse of his canine partner. (Doc. #146-5, p. 64.) Quintana provided Deputy Jason Yerk's (plaintiff or Yerk) contact information to PETA as a corroborating witness. Yerk worked with Deputy Jelly at the LCSO at the time. (Id., p. 82.) This much seems undisputed in the record.

From plaintiff's perspective, it is undisputed that on October 21, 2008, he entered into an oral agreement with PETA through Christina Wheeless (Wheeless) in which he agreed to provide information to PETA regarding animal abuse committed by Deputy Jelly in exchange for PETA's promise to maintain his identity as a source of information confidential. After entering this agreement, Yerk described for Wheeless the abuse he had witnessed Deputy Jelly committing to his K-9 dog. Thereafter, Kristen Dejournett (Dejournett), the PETA caseworker assigned to this case, disclosed not only the substance of the alleged animal abuse witnessed by Yerk but also revealed that Yerk was one of the sources who reported the abuse to PETA.

"An oral contract, such as the one in this case, is subject to the basic requirements of contract law such as offer, acceptance, consideration and sufficient specification of essential terms." St. Joe Corp. v. McIver, 875 So. 2d 375, 381 (Fla. 2004). Fact issues have been raised by PETA as to the existence of such an agreement, its precise terms if it exists, and the authorization of Wheeless to enter into an agreement binding PETA. The evidence on these matters is conflicting, and because the evidence on plaintiff's summary judgment motion must be viewed in the light most favorable to PETA, summary judgment is precluded. Therefore, plaintiff's motion for partial summary judgment must be denied.

### IV.   PETA's Motion for Summary Judgment (Doc. #135)

PETA seeks summary judgment as to all counts for various reasons.  As to this motion, any disputed evidence must be viewed in favor of plaintiff.  Therefore, for purposes of PETA's motion, the Court construes the facts to have established that on October 21, 2009, PETA entered into a confidentiality agreement with Yerk whereby PETA agreed to maintain as confidential Yerk's identity as a source of information who reported suspected animal abuse.  With this established for summary judgment purposes, the basics of what followed seem to be undisputed.

On November 4, 2008, PETA sent a letter to the LCSO which stated that it had received complaints alleging that Deputy Jelly had on multiple occasions abused his K-9 partner.  (Doc. #139-7.) The letter also stated that the callers feared reprisal and had asked to remain anonymous, however the letter listed a series of witnesses to the alleged abuse and requested that the LCSO conduct an investigation.  The letter identified Yerk as one of the witnesses to the abuse, but not as one of the callers who reported it.  (Id.)  Yerk does not assert that this disclosure violated his confidentiality agreement with PETA.

On November 13, 2008, Lieutenant Kathy Rairden (Lt. Rairden) of the LCSO initiated an internal affairs investigation of Deputy Jelly.  (Doc. #136-2, p. 19.)  In connection with that investigation, Lt. Rairden contacted Dejournett, the PETA

investigator assigned to the case.  Lt. Rairden requested that
DeJournett reveal the callers' identities, and told her that the
name of an active duty deputy could not be confidential.  In
response, Dejournett orally identified Yerk as one of the callers.
(Doc. #146-9, pp. 144-145.)  This, Yerk asserts, was in violation
of his confidentiality agreement with PETA.

Later, Dejournett indicated to Lt. Rairden that identifying
Yerk was a mistake, and that PETA had a confidentiality agreement
with the caller.  (Doc. #146-11, p. 22.)  Lt. Rairden then
requested notes of the calls to PETA.  Initially, Dejournett
provided Lt. Rairden with redacted notes and explained in an email
that the identity of the caller was confidential.  (Doc. #139-3.)

On November 18, 2009, Lt. Rairden responded by email and
stated that "once the deputies make a statement to you as an
employee of the Sheriff's Office the confidentiality should not
extend to them." (Doc. #139-4.)  Dejournett responded that PETA's
"confidentiality agreement extends to everyone, whether they be a
citizen, law enforcement officer, whistle-blower, etc."  (Doc.
#139-5.)  Later that day, however, Dejournett stated in an email
that she had consulted with her supervisors and agreed to provide
Lt. Rairden with the un-redacted notes.  These notes identified
Yerk as one of the callers.  (Doc. #136-1, p. 18.)

On or about November 19, 2008, Lt. Rairden interviewed several
K-9 officers, including Yerk, in connection with the investigation

of Deputy Jelly.  Yerk gave Lt. Rairden information regarding the
animal abuse he observed.  During the interview, Lt. Rairden asked
Yerk whether he had spoken to anyone outside the LCSO about the
incidents involving Deputy Jelly, and specifically whether he had
spoken to PETA.  (Doc. #136-2, p. 65.)  Yerk responded "no" to both
questions.  (Id.)

On November 20, 2008, Lt. Rairden conducted a follow-up
interview of Yerk.  In the follow-up interview, Yerk admitted
speaking to PETA.  Lt. Rairden then initiated an internal affairs
investigation into Yerk's untruthfulness.  (Doc. #163-3, p. 7.)

On November 26, 2008, Lieutenant Jeffrey Trusal (Lt. Trusal)
was scheduled to conduct an interview of Yerk.  Yerk appeared and
was represented by counsel.  After reviewing the file, Lt. Trusal
advised Yerk of the complaint against him.  Yerk discussed the
matter with his attorney and decided to resign.[2]  Yerk submitted
his resignation letter that day.  (Doc. #163-3, p. 1.)  Although
Yerk was no longer employed with the LCSO, on December 11, 2008,
Lt. Trusal issued his determination that the charge of
untruthfulness against Yerk was substantiated.  (Doc. #163-3, pp.
3-6.)

---

[2]Yerk contends that there was a culture of reprisal at LCSO
and the investigation of Deputy Jelly was a pretext to discover
"the rat" who would eventually be terminated.  Yerk also contends
that the LCSO was politically corrupt.  (Doc. #146, p. 2.)

**A.    Estoppel Based on Untruthfulness**

PETA first argues that plaintiff is estopped from maintaining any civil action because of Yerk's own wrongful and illegal conduct, i.e., perjury to Lt. Rairden in violation of Fla. Stat. §§ 837.02, 837.012 and 837.05. (Doc. #135, pp. 8-10.) PETA relies on Kaminer v. Eckerd Corp., Inc., 966 So. 2d 452 (Fla. 4th DCA 2007). In Kaminer, a young man died from his voluntary ingestion of Oxycontin. Id. at 453. He had obtained the Oxycontin from his fraternity brother, who in turn had obtained the drug from his roommate, a pharmacy technician. The young man's estate sued the pharmacy for failure to safeguard the drug. The court applied the common law rule that a party cannot maintain an action based on the party's own illegal conduct, and granted summary judgment for the pharmacy. Id. at 454-55.

The Court finds that Kaminer is inapplicable to the present case. Yerk's untruthfulness does not constitute "illegal" conduct under any of the statutes cited by defendant. Florida Statutes § 837.02 makes it illegal to make a false statement, under oath, in any official proceeding in regard to any material matter. Section 837.012 makes it illegal to make a false statement, under oath, *not* in an official proceeding in regard to a material matter. Both statutory sections require that the false statement relate to a matter material to the underlying case. Whether Yerk spoke to PETA was not "material" to the underlying case – Deputy Jelly's alleged

abuse of his K-9 partner.  See State v. Diaz, 785 So. 2d 744, 745-46 (2001)(To constitute perjury "it is insufficient that the statements are untrue or incorrect; the statements must have a bearing on a determination in the underlying case.").[3]  Finally, § 837.05 makes it illegal to give false information to any law enforcement officer concerning the alleged commission of any crime. Whether Yerk spoke to PETA does not "concern the commission" of Deputy Jelly's alleged crime.  Therefore, § 837.05 simply does not apply.  Additionally, while it may be "frustrating and annoying" to an officer, a person is not compelled to answer an officer's questions during the course of an investigation.  R.S. v. State, 531 So. 2d 1026, 1026-27 (Fla. 1st DCA 1988); Sommer v. State, 465 So. 2d 1339, 1343 (Fla. 5th DCA 1985)("Police officers and other citizens, too, can ask questions of anyone on the street. Anyone questioned can refuse to answer.").  Based upon the foregoing, and under the facts of this case as viewed in the light most favorable to plaintiff, plaintiff is not estopped from maintaining this action.

---

[3]Lt. Rairden's interview of Yerk was not an "official proceeding", so Fla. Stat. § 837.02 would not apply in any case. See Schramm v. State, 374 So. 2d 1043 (Fla. 3rd DCA 1979)(finding statement under oath to police is not "official proceeding"); see also Fla. Stat. § 837.011.

## B.  Contract As Violation of Public Policy

Plaintiff brings one contract claim and six[4] tort claims arising from the same operative facts.  The Court first discusses whether the breach of contract claim is barred as a matter of public policy, as PETA asserts.  (Doc. #135, pp. 14-17.)

Under Florida law, a cause of action for breach of contract requires (1) the existence of a valid contract; (2) a material breach of the contract; and (3) damages.  Brooks Tropicals, Inc. v. Acosta, 959 So. 2d 288, 292 (Fla. 3d DCA 2007); Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A., 938 So. 2d 571, 575 (Fla. 4th DCA 2006).  Count IV alleges breach of an oral contract formed on October 21, 2009, between Yerk and PETA, acting through Wheeless.  As stated above, for purposes of PETA's motion, PETA entered into a confidentiality agreement in which it agreed to maintain as confidential Yerk's identity as a source who had contacted PETA to report suspected animal abuse.  PETA argues that such a contract is not a "valid" contract because it is unenforceable and void as against public policy.

Florida courts recognize that a contract which is unlawful because it violates public policy will not be enforced.  "Illegality is a compelling reason not to enforce a contract."  Jupiter Med. Ctr., Inc. v. Visiting Nurse Ass'n of Fla., Inc., ___

---

[4]Count VII was withdrawn by plaintiff at the final pretrial hearing.

So. 3d ___, 2011 WL 4056293 (Fla. 4th DCA 2011).  Florida courts,

however, use care when determining that a contract is contrary to

public policy.

> When determining whether a contract violates public
> policy, it is necessary to carefully balance the public
> interest with the right to freely contract. When a
> contract is not prohibited under [a] constitutional or
> statutory provision, or prior judicial decision, it
> should not be struck down on the ground that it is
> contrary to public policy, except it be clearly injurious
> to the public good or contravene some established
> interest of society.  Therefore, courts should be guided
> by the rule of extreme caution when called upon to
> declare transactions void as contrary to public policy
> and should refuse to strike down contracts involving
> private relationships on this ground, unless it be made
> clearly to appear that there has been some great
> prejudice to the dominant public interest sufficient to
> overthrow the fundamental public policy of the right to
> freedom of contract....

Johnson, Pope, Bokor, Ruppel & Burns, LLP v. Forier, 67 So. 3d 315,

318 (Fla. 2d DCA 2011)(citations and quotation marks omitted).

As a general matter, a private corporation such as PETA may be

able to enter into an enforceable agreement not to disclose the

identity of a source of information to the source's employer.

After all, the law routinely recognizes the general validity of

private confidentiality agreements in various contexts.  The nuance

in this case, however, is that the employer is the Sheriff and the

information being reported to PETA relates to the commission of a

crime.

There are several instances recognized by Florida law which

allow the identity of a person reporting abuse to remain

confidential. Fla. Stat. §§ 39.201(b), 39.205(3) (reports of child abuse or neglect); Fla. Stat. § 415.107(3), (6), 415.111(2)(reports of vulnerable adult abuse); Fla. Stat. § 17.0401 (consumer complaint regarding financial investigations).  None of these relate to animal abuse, and in any case, the confidentiality allowed by these statutes does not create an absolute privilege against disclosure. A court, for example, can compel disclosure of the source's identity and can order that it become public record. Fla. Stat. § 39.202(f) (reporter of child abuse).  Additionally, even where a private confidentiality agreement is otherwise proper, it will not be enforced where its effect becomes obstructive of the rights of non-parties.  See, e.g., Nestor v. Posner-Gerstenhaber, 857 So. 2d 953, 955 (Fla. 3rd DCA 2003); Scott v. Nelson, 697 So. 2d 1300, 1301 (Fla. 1st DCA 1997).

In this case, the confidentiality agreement allowed PETA to disclose the substance of the alleged abuse and the identity of the witnesses to it.  The agreement only precluded the disclosure of the identity of PETA's source.  While it seems clear that the confidentiality agreement did not and could not create an absolute privilege, and would eventually give way to lawful procedures which could compel disclosure of the source's identity, that stage had not arrived in this case.  At the time of the disclosure in this case, PETA was not legally required to answer questions from the LCSO.  Given the "extreme caution" the Court must use before

declaring a transaction void as contrary to public policy, the
Court cannot find that the agreement in this case clearly affected
"some great prejudice to the dominant public interest sufficient to
overthrow the fundamental public policy of the right to freedom of
contract". <u>Forier</u>, 67 So. 3d at 318. Accordingly, the Court finds
that the agreement is not unenforceable as a violation of Florida
public policy.

**C.  Florida Economic Loss Doctrine**

PETA argues that all the tort claims must be dismissed because
they are derivative of the oral contract claim and therefore
violate Florida's economic loss doctrine. (Doc. #135, pp. 17-20.)
The Court disagrees.

"[T]he economic loss rule in Florida is applicable in only two
situations: (1) where the parties are in contractual privity and
one party seeks to recover damages in tort for matters arising out
of the contract, or (2) where the defendant is a manufacturer or
distributor of a defective product which damages itself but does
not cause personal injury or damage to any other property." <u>Curd
v. Mosaic Fertilizer, LLC</u>, 39 So. 3d 1216, 1223 (Fla. 2010)(citing
<u>Indem. Ins. Co. v. Am. Aviation, Inc.</u>, 891 So. 2d 532 (Fla. 2004)).
"[E]ven in these two situations, the economic loss rules would not
prevent the bringing of an action and recovery for intentional
torts, such as, fraud, conversion, intentional interference, civil
theft, abuse of process, and other torts requiring proof of

-15-

intent." Id. at 1223 n.4; see also HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238, 1239 (Fla. 1996); Moransais v. Heathman, 744 So. 2d 973, 981, 983 (Fla. 1999) (recognizing that claims of fraudulent inducement and negligent misrepresentation were not barred by economic loss rule where they were independent from underlying contract); Hallock v. Holiday Isle Resort & Marina, Inc., 4 So. 3d 17, 20 (Fla. 3d DCA 2009)(finding that economic loss rule did not abolish cause of action for breach of fiduciary duty even if there was underlying oral or written contract).

PETA denies the existence of a confidentiality agreement, and the Court has found sufficient disputed facts to allow the breach of contract claim to go to the jury. A jury verdict finding a breach of contract may indeed impact the viability of the tort claims, but this possibility does not justify summary judgment. Even when inconsistent remedies are asserted, Florida law does not require a plaintiff to elect between counts prior to judgment. Monco of Orlando, Inc. v. ITT Indus. Credit Corp., 458 So. 2d 332, 334 (Fla. 5th DCA 1984). Additionally, plaintiff is allowed to plead counts in the alternative, regardless of consistency, Fed. R. Civ. P. 8(d)(2), (3). Therefore, the motion for summary judgment on this ground is denied.

### D.  Fiduciary Relationship, Counts I and II

PETA seeks summary judgment as to Counts I and II for three additional reasons. The Court will address the first two now and

the third later on in the opinion[5]. For the reasons set forth below, the motion for summary judgment will be denied on the first two grounds.

First, PETA asserts that the facts are "nowhere near the situations where a fiduciary duty exists". (Doc. #135, pp. 20-21). "Fiduciary relationships implied in law are premised upon the specific factual situation surrounding the transaction and the relationship of the parties.  Courts have found a fiduciary relation implied in law when confidence is reposed by one party and a trust accepted by the other." <u>Capital Bank v. MVB, Inc.</u>, 644 So. 2d 515, 518 (Fla. 3d DCA 1994)(citations omitted).  The totality of the facts, viewed in the light most favorable to Yerk, would allow a reasonable jury to find a fiduciary relationship and a resulting fiduciary duty.  Summary judgment on this ground is denied.

Second, PETA asserts that there was no breach of any duty of confidentiality because PETA had a superior duty to truthfully respond to the demands of law enforcement. (Doc. #135, p. 21.)  As discussed above, PETA had no legally enforceable duty to answer the questions of the LCSO when it did.  <u>Sommer</u>, 465 So. 2d at 1342. Assuming, however, that PETA had a duty to truthfully respond to the demands of the investigating law enforcement officer, this

---

[5]PETA's third argument is that there was no proximately caused damages as to Counts I and II because its identification of Yerk as the source of PETA's information was not believed by the LCSO and Yerk lied and was caught by his admission to the lie.  (Doc. #135, p. 21.)

competing and conflicting duty would not justify summary judgment. The Florida Supreme Court has held that the existence of conflicting duties are to be weighed by the jury. <u>Barnett Bank of W. Fla. v. Hooper</u>, 498 So. 2d 923, 925 (Fla. 1986).

### E.  Negligence Claim- Florida Impact Rule and Legal Duty

PETA seeks summary judgment as to Count VI, the negligence claim, on the grounds that a negligence claim will not lie because (1) there was no bodily injury or property damage, and (2) PETA had no legal duty to conceal information from the police.  (Doc. #135, pp. 21-22.)

Florida has a long history of disallowing either a cause of action for negligent infliction of emotional distress or recovery of damages for emotional distress in a negligence action, unless the emotional distress flows from physical injuries sustained in an impact.  "The impact rule, which is well established in this state, requires that 'before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact.'"  <u>S. Baptist Hosp. of Fla., Inc. v. Welker</u>, 908 So. 2d 317, 320 (Fla. 2005)(quoting <u>R.J. v. Humana of Fla., Inc.</u>, 652 So. 2d 360, 362 (Fla. 1995)).

> The impact rule has been traditionally applied primarily as a limitation to assure a tangible validity of claims for emotional or psychological harm.  Florida jurisprudence has generally reasoned that such assurance is necessary because, unlike physical injury, emotional harm may not readily align with traditional tort law

damage principles. Our courts have explained that the
existence of emotional harm is difficult to prove,
resultant damages are not easily quantified, and the
precise cause of such injury can be elusive. This Court
has also theorized that without the impact rule, Florida
courts may be inundated with litigation based solely on
psychological injury.

Rowell v. Holt, 850 So. 2d 474, 477-78 (Fla. 2003)(citations

omitted). "Exceptions to the rule have been narrowly created and

defined in a certain very narrow class of cases in which the

foreseeability and gravity of the emotional injury involved, and

lack of countervailing policy concerns, have surmounted the policy

rationale undergirding application of the impact rule." Id. at

478. "The impact rule does not apply to recognized intentional

torts that result in predominantly emotional damages . . ." Id.

n.1.

The negligence claim in this case alleges that PETA breached

a duty of confidentiality when it disclosed Yerk's identity as a

source of information to the LCSO, and seeks damages including

mental anguish and suffering. (Doc. #1, ¶38.) There is no

physical impact in this case. The circumstances in this case are

a far cry from the breach of confidentiality in Gracey v. Eaker,

837 So. 2d at 356, (where "one's psychotherapist reveal[ed] without

authorization or justification the most confidential details of

one's life"), or Fla. Dep't. of Corr. v. Abril, 969 So. 2d 201

(Fla. 2007)(where clinical laboratory with statutory duty of

confidentiality disclosed HIV test information) which the Florida

Supreme Court found were not within the impact rule.  PETA is therefore entitled to summary judgment, precluding damages for mental anguish and suffering as to the negligence count.

PETA's argument goes further, however, because it seeks not only to preclude damages but to bar the entire negligence claim due to lack of physical impact.  PETA relies upon <u>Monroe v. Sarasota Cnty. Sch. Bd.</u>, 746 So. 2d 530, 531 (Fla. 2d DCA 1999), which states that "as a general rule, [] bodily injury or property damage is an essential element of a cause of action in negligence.  We will expand the common law tort of negligence, waiving that essential element only under extraordinary circumstances which clearly justify judicial interference to protect a plaintiff's economic expectations."  An even clearer statement of Florida law followed:

> The final judgment recognizes that, as a general rule, a party cannot recover damages for emotional distress in the absence of physical injury or illness. However, this "impact doctrine" or "impact rule," which is explained in a long line of cases including <u>Rowell v. Holt</u>, 850 So. 2d 474 (Fla. 2003)] and <u>R.J. v. Humana of Florida, Inc.</u>, 652 So.2d 360 (Fla. 1995), does not merely prevent an award of monetary damages representing a party's "emotional distress" while permitting recovery for other types of damages. Rather, this doctrine generally requires proof of a physical injury or illness before a plaintiff is permitted to recover any type of damages awardable under a negligence theory.

<u>Greenacre Props., Inc. v. Rao</u>, 933 So. 2d 19, 25 (Fla. 2d DCA 2006).  Because it is undisputed that Yerk suffered no physical injury or illness, he is not "permitted to recover any type of

damages awardable under a negligence theory." <u>Id.</u> Therefore, summary judgment as to Count VI will be granted in favor of PETA.

**F. Tortious Interference**

Among other things, PETA argues that the tortious interference claim cannot survive because "there is no evidence that it was done to interfere with Yerk's employment". (Doc. #135, p. 24.) Because such an intent is required, and is absent in this case even when the evidence is viewed in the light most favorable to plaintiff, summary judgment will be granted on this count.

The elements of tortious interference are "(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." <u>Gossard v. Adia Servs., Inc.</u>, 723 So. 2d 182, 184 (Fla. 1998). "Imbedded within these elements is the requirement that the plaintiff establish that the defendant's conduct caused or induced the breach that resulted in the plaintiff's damages." <u>Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.</u>, 832 So. 2d 810, 814 (Fla. 2d DCA 2002)(citing <u>St. John's River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc.</u>, 784 So. 2d 500, 504 (Fla. 5th DCA 2001)). "A cause of action for tortious interference requires a showing of both an intent to damage the business relationship and a lack of justification to take the action which

caused the damage." <u>Networkip, LLC v. Spread Enters., Inc.</u>, 922
So. 2d 355, 358 (Fla. 3d DCA 2006). "Proof of the requisite intent
is necessary as '[t]here is no such thing as a cause of action for
interference which is only negligently or consequentially
effected.'" <u>Maxi-Taxi of Fla., Inc. v. Lee Cnty. Port Auth.</u>, 301
F. App'x 881, 885-86 (11th Cir. 2008)(quoting <u>Ethyl Corp. v.
Balter</u>, 386 So. 2d 1220, 1223-24 (Fla. 3d DCA 1980)).

There is no evidence which would support an inference that
PETA's disclosure of Yerk's identity as a source of information was
done with an intent to interfere with or damage the employment
relationship between Yerk and the LCSO. Even if the initial
disclosure was not accidental, it is undisputed that the disclosure
was only made at the insistence of the LCSO and even then was
resisted by PETA.

### G. Fraudulent and Negligent Misrepresentation

In addition to the proximate cause issue, discussed below,
PETA argues that Counts III and V must fail because (1) "a false
statement amounting to a promise to perform an act in the future
does not constitute actionable fraud", and (2) PETA made no promise
without the intent of performing it because it was not disclosed
until demanded by law enforcement. (Doc. #135, p. 23.)

As a general rule, "a false statement of fact, to be a ground
for fraud, must be of a past or existing fact, not a promise to do
something in the future." <u>Vance v. Indian Hammock Hunt & Riding</u>

<u>Club, Ltd.</u>, 403 So. 2d 1367, 1371 (Fla. 4th DCA 1981).   An
exception to this general rule exists "where the promise to perform
a material matter in the future is made without any intention of
performing or made with the positive intention not to perform."
<u>See Wadington v. Cont'l Med. Servs., Inc.</u>, 907 So. 2d 631, 631
(Fla. 4th DCA 2005)(citations omitted); <u>see also Gemini Investors
III, L.P. v. Nunez</u>, ___ So. 3d ___, 2011 WL 4578015 (Fla. 3d DCA
2011).  However, projections, opinions or representations regarding
future results can constitute fraud when made by a party with
superior or exclusive knowledge of the underlying facts and that
party "knew or should have known, that the facts in his possession
invalidated the opinion which he expressed." <u>See Varnum v. Nu-Car
Carriers, Inc.</u>, 804 F.2d 638, 642 (11th Cir. 1986)(applying Florida
law); <u>Mejia v. Jurich</u>, 781 So. 2d 1175, 1177 (Fla. 3d DCA
2001)(collecting cases).

    Here, the evidence in the record, viewed in the light most
favorable to plaintiff, is sufficient to create a jury issue with
respect to PETA's promise of confidentiality.  Since PETA promised
anonymity on a regular basis (doc. #146-3, pp. 61-62) and
maintained in-house counsel (doc. # 146-9, p. 154), a jury could
find that PETA had superior knowledge regarding the scope of its
confidentiality agreement and knew or should have known that
promising absolute anonymity was a false promise.  Accordingly, the

motion for summary judgment will be denied as to these two counts.

## H.  Proximate Causation of Yerk's Damages

As noted above, the damages plaintiff seeks on all counts are the same - lost wages and benefits, lost future earning capacity, and mental anguish and suffering.  PETA essentially argues that it is entitled to summary judgment on all counts because its conduct was not the proximate cause of these damages.  PETA argues that it was not foreseeable that Yerk would lie to the LCSO and then voluntarily resign from the LCSO when confronted with his lie. PETA also argues that because Yerk has not shown constructive termination, plaintiff cannot show that PETA's actions caused the loss of Yerk's job, wages, benefits, and other consequential damages.

### (1)  Causation as Required Element

The Court starts from the position that all the remaining counts[6] require plaintiff to establish that PETA's misconduct was the legal cause of damages.  Count I, Breach of Fiduciary Duty: see Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002)("The elements of a claim for breach of a fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages. . . . Further, one in such a fiduciary relationship is subject to legal responsibility

---

[6]The Court has granted summary judgment on Counts VI and VIII and plaintiff voluntarily dismissed Count VII. Thus, Counts I-V remain.

for harm flowing from a breach of fiduciary duty imposed by the relationship."); <u>Bernstein v. True</u>, 636 So. 2d 1364, 1367 (Fla. 4th DCA 1994)("Even assuming a breach of fiduciary duty, appellant cannot recover without proof of causation."); <u>Crusselle v. Mong</u>, 59 So. 3d 1178, 1181 (Fla. 5th DCA 2011)("The elements of a cause of action for breach of fiduciary duty are (1) the existence of a duty, (2) breach of that duty, and (3) damages flowing from the breach."). Count II, Constructive Fraud: <u>see</u> <u>Taylor v. Kenco Chem. & Mfg. Corp.</u>, 465 So. 2d 581, 589 (Fla. 1st DCA 1985)(Claim for constructive fraud, like actual fraud, requires causation). Count III, Fraudulent Misrepresentation: <u>see</u> <u>Butler v. Yusem</u>, 44 So. 3d 102, 106 (Fla. 2010)(Elements of fraudulent misrepresentation are "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation."). Count IV, Breach of Oral Contract: <u>see</u> <u>Rollins, Inc. v. Butland</u>, 951 So. 2d 860, 876 (Fla. 2d DCA 2006)("The elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach."); <u>Chipman v. Chonin</u>, 597 So. 2d 363, 364 (3rd DCA 1992)("In breach of contract actions, a plaintiff may recover only if the damages were a proximate result of the breach."); <u>Capitol Envtl. Servs., Inc. v. Earth Tech, Inc.</u>, 25 So.

3d 593, 596 (Fla. 1st DCA 2009)("The injured party is entitled to recover all damages that are causally related to the breach so long as the damages were reasonably foreseeable at the time the parties entered into the contract."). Count V, Negligent Misrepresentation: see Specialty Marine & Indus. Supplies, Inc. v. Venus, 66 So. 3d 306, 309 (Fla. 1st DCA 2011)(Elements of negligent misrepresentation are "(1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely and [sic] on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation.").

### (2)   Principles of Proximate Cause and Intervening Cause

The Florida Supreme Court has summarized the relevant proximate causation principles as follows:

> The issue of proximate cause is generally a question of fact concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred. This Court has stated that harm is 'proximate' in a legal sense if prudent human foresight would lead one to expect that similar harm is likely to be substantially caused by the specific act or omission in question. The proper question is whether the individual's conduct is so unusual, extraordinary or bizarre (i.e., so 'unforeseeable') that the policy of the law will relieve the [defendant] of any liability for negligently creating this dangerous situation. In this Court's words, [t]he law does not impose liability for freak injuries that were utterly unpredictable in light of common human experience. Where reasonable persons could differ as to

whether the facts establish proximate causation, the
issue must be left to the fact finder.

     A negligent actor . . . is not liable for damages
suffered by an injured party when some separate force or
action is the active and efficient intervening cause of
the injury. Such an intervening cause supersedes the
prior wrong as the proximate cause of the injury by
breaking the sequence between the prior wrong and the
injury. However, if an intervening cause is foreseeable
the original negligent actor may still be held liable.
The question of whether an intervening cause is
foreseeable is for the trier of fact.  In reaching this
determination, the question is whether the harm that
occurred was within the scope of the danger attributable
to the defendant's negligent conduct.

Goldberg v. Fla. Power & Light, Co., 899 So. 2d 1105, 1116 (Fla.
2005)(internal citations and quotation marks omitted).

Although the above standard refers only to negligence claims,
these principles are also applicable to breach of contract claims
and, while not as stringently, to intentional torts.   See, e.g.,
Mnemonics, Inc. v. Max Davis Assocs., Inc., 808 So. 2d 1278, 1280
(Fla. 5th DCA 2002)("Damages recoverable by a party injured by a
breach of contract are those that naturally flow from the breach
and can reasonably be said to have been contemplated by the parties
at the time the contract was entered into."); Stensby v. Effjohn Oy
Ab, 806 So. 2d 542, 544 (Fla. 3d DCA 2001)("It is of course
established that a breach-of-contract-plaintiff must show that the
defendants' breach was a 'substantial factor' in causing damage.");
United Food & Commercial Workers Unions, Emp'rs Health & Welfare
Fund v. Philip Morris, Inc., 223 F.3d 1271, 1274 (11th Cir.
2000)(finding "the usual common law rule seems to be that the

strictures of proximate cause are applied more loosely in intentional tort cases" but that proximate cause is still a requirement); <u>see also</u> <u>Himes v. Brown & Co. Secs. Corp.</u>, 518 So. 2d 937, 938 (Fla. 3d DCA 1988)(dismissing various causes of action because plaintiff could not show that damages were proximately caused by defendant's actions).

Defendant is not liable when a separate force or action is the active and efficient intervening cause, the sole proximate cause or an independent cause of the plaintiff's damages. <u>See</u> <u>Dep't of Transp. v. Anglin</u>, 502 So. 2d 896, 898 (Fla. 1987)(citing <u>Gibson v. Avis Rent-a-Car Sys., Inc.</u>, 386 So.2d 520 (Fla. 1980)).  However, when an intervening cause is foreseeable to the defendant, he may still be held liable.  <u>Anglin</u>, 502 So. 2d at 898.

The question of proximate cause is "generally for juries to decide using their common sense upon appropriate instructions, although occasionally, when reasonable people cannot differ, the issue has been said to be one of law for the court." <u>Stahl v. Metro. Dade Cnty.</u>, 438 So. 2d 14, 21 (Fla. 3d DCA 1983).

**(3) Application to the Present Case**

Here, Yerk has suffered damages (i.e., his lost wages, benefits, and other consequential damages) as a result of his unemployment.  The legal cause of his unemployment, actual and proximate, is the critical issue.  The question is whether Yerk was compelled to resign as a result of PETA disclosing his identity as

a source of information and whether his forced resignation was reasonably foreseeable to PETA at the time it promised him anonymity.

### (a) Yerk's Lie as an Intervening Cause

Although PETA maintains that Yerk was not compelled to resign, PETA argues that even if he were compelled, he did so because of his untruthfulness. When Lt. Rairden asked Yerk if he had spoken to PETA, he replied "no" - which was a lie. Once confronted with his lie, he confessed and ultimately resigned. PETA contends that it was not foreseeable that Yerk would lie to the LCSO and, therefore, the lie was an independent intervening cause of his unemployment. The Court disagrees.

PETA promised Yerk anonymity and was on notice that he feared reprisal. A reasonable jury could find that it was reasonably foreseeable to PETA that Yerk would lie because he felt privileged not to disclose a discussion which he believed was confidential. Because such an intervening cause was reasonably foreseeable, it would not break the chain of causation and absolve PETA of liability. Anglin, 502 So. 2d at 898.

### (b) Whether PETA's Conduct Was Proximate Cause of Resignation

PETA asserts that its conduct was not the proximate cause of Yerk's resignation, and therefore not the proximate cause of the damages plaintiff claims. PETA argues that Yerk was not compelled to resign and that he could have waited for the LCSO's

determination of discipline regarding his untruthfulness; if the discipline included termination, Yerk could have appealed the decision.  To determine whether Yerk was "compelled" to resign, PETA urges the court to adopt the standard for constructive termination utilized in Title VII cases.  Under this standard, it is unlikely that any evidence in the record would support a finding of constructive termination by the LCSO.  See Hargray v. City of Hallandale, 57 F.3d 1560, 1568 (11th Cir. 1995); Morgan v. Ford, 6 F.3d 750, 755 (11th Cir. 1993); Ross v. City of Perry, 396 F. App'x 668, 671 (11th Cir. 2010).  Plaintiff responds that the above standard should not be applied in Yerk's case because, unlike the plaintiffs in Hargray, Morgan and Ross, he is not alleging constitutional or statutory causes of action, but rather various common law causes of action which simply require a showing of legal causation.  (Doc. #146, ¶¶44, 45.)

The relevant issue is whether the resignation was reasonably foreseeable to PETA, not whether the LCSO's subsequent treatment of Yerk constituted a constructive termination.  This indeed is a troublesome issue, and much of the evidence plaintiff puts forward concerning the LCSO and its culture is simply irrelevant because the majority of it was not known to PETA at the time it promised Yerk anonymity.  There is, however, sufficient evidence as to the information actually communicated to PETA which creates a jury

question as to proximate cause and to keep this case within the normal rule - the jury gets to decide.

Accordingly, it is now

**ORDERED**:

1.  Count VII is **DISMISSED WITH PREJUDICE**, plaintiff having announced he will not pursue that count.

2.  Defendant's Dispositive Motion for Summary Judgment (Doc. #135) is **GRANTED** as to Counts VI and VIII, and judgment on these counts will be entered in favor of defendant.  The Motion is otherwise **DENIED**.

3.  Plaintiff's Partial Motion for Summary Judgment (Doc. #139) is **DENIED**.

4.  The Clerk of the Court shall withhold entry of judgment pending completion of the case.

**DONE AND ORDERED** at Fort Myers, Florida, this    4th   day of November, 2011.


                                                         JOHN E. STEELE
                                                         United States District Judge


Copies: Counsel of record