UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT E. TARDIF, JR., as Trustee
for Jason Yerk,

                Plaintiff,

vs.                          Case No. 2:09-cv-537-FtM-29SPC

PEOPLE for the ETHICAL TREATMENT of
ANIMALS, a Virginia not-for-profit
corporation,

                Defendant.
_____

**OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion to Strike Plaintiff's Expert Report and Preclude Testimony of Dr. Pettingill (Doc. #133) filed on June 16, 2011. Plaintiff filed a Response (Doc. #144) on June 30, 2011. Defendant seeks to exclude plaintiff's expert, Dr. Bernard Pettingill, from testifying at trial and from submitting his report as evidence of plaintiff's employment-related damages.

**I.**

Defendant first argues that the expert report should be stricken because the disclosure of it was untimely and failed to comply with the Federal Rules of Civil Procedure and this Court's Case Management and Scheduling Order. Rule 26(a)(2) provides:

> (A) *In General.* In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial

> to present evidence under Federal Rule of Evidence 702, 703, or 705.
>
> (B) *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

"If a party fails to provide information or identify a witness as required by Rule 26(a)[], the party is not allowed to use that information or witness to supply evidence... at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The following factors guide the Court in determining whether to exclude evidence pursuant to Rule 37(c)(1): "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." <u>Vitola v. Paramount Automated Food Servs., Inc.</u>, No. 08-61849, 2009 WL 5067658 (S.D. Fla. Dec. 17, 2009)(citing <u>David v. Caterpillar, Inc.</u>, 324 F.3d 851, 857 (7th Cir. 2003)).

Here, the Court's Case Management and Scheduling Order required plaintiff to disclose his expert report on April 14, 2007. (Doc. #73.) Plaintiff petitioned the Court for extra time and was permitted to submit his report on or before May 18, 2011. (Doc. #120.) On May 17th, plaintiff submitted Dr. Pettingill's report to defendant but the report failed to include the specific data upon which his opinion was based, failed to include Dr. Pettingill's qualifications, publications and other cases in which Dr. Pettingill had testified, failed to include a statement of compensation and was not signed. On June 27th, plaintiff provided defendant with an amended report. (Doc. #144-2.)

The Court finds that in the instant case, plaintiff's failure to submit a complete report on or before May 18, 2011 was harmless. Defendant cannot claim surprise or prejudice, as this case has been extensively litigated and plaintiff has consistently asserted his claim for lost wages and benefits. Additionally, as of at least June 30, 2011, plaintiff has offered to make Dr. Pettingill available for deposition at the defendant's convenience. Disruption of the trial is unlikely because defendant would still have over one month to depose plaintiff's expert. Lastly, there is no evidence of bad faith or willfulness on plaintiff's part. Accordingly, the motion to strike Dr. Pettingill's report on the basis of untimeliness will be denied.

**II.**

Next, defendant argues Dr. Pettingill's report should be excluded because it is not probative of any fact in issue and provides for damages not allowable under Florida law. The report is entitled "The Present Value Analysis of the Loss of Back Pay and Front Pay of Jason Yerk" and discusses "the present value of the funds needed to finance the loss of back pay and front pay resulting from [Yerk's] constructive termination." (Doc. #144-2, p. 4.) Defendant argues that "front pay" and "back pay" damages are not allowable in this case because PETA was not Yerk's employer and, thus it could not have "constructively terminated" him. Front pay, back pay and constructive termination are terms of art used in the employment context, typically involving discrimination or retaliation claims. The fact that this is not a typical employment case does not mean that Yerk's lost wages cannot be an item of damage. Tort recovery involves all damages which are the natural, direct and proximate cause of the tortious conduct and recovery for breach of contract involves damages which were or should have been within the reasonable contemplation of the parties at the time the contract was made. Tillman v. Howell, 634 So. 2d 268, 270 (Fla. 4th DCA 1994). Thus, depending on what the jury finds, lost wages may be an allowable element of damages in this case. Testimony consistent with the report will not be excluded on this basis.

**III.**

Finally, defendant argues that Dr. Pettingill's report and testimony should be excluded pursuant to Federal Rule of Evidence 702. The legal principles governing the admissibility of expert testimony are well settled. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) and Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993) the Supreme Court held that the trial court had a "gatekeeper" function designed to ensure that any and all expert testimony is both relevant and reliable. The importance of this gatekeeping function "cannot be overstated." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004)(*en banc*), cert. denied, 544 U.S. 1063 (2005).

In determining the admissibility of expert testimony under Rule 702, the Court applies a "rigorous" three-part inquiry. Frazier, 387 F.3d at 1260. Expert testimony is admissible if "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert[]; and (3)

the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." Rosenfeld v. Oceania Cruises,Inc., 654 F.3d 1190, 1193 (11th Cir. 2011)(citation omitted). "The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1261 (11th Cir. 2004); see also McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002). The admission of expert testimony is a matter within the discretion of the district court, which is accorded considerable leeway in making its determination. Cook v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1103 (11th Cir. 2005); Frazier, 387 F.3d at 1258.

The first requirement for the admissibility of expert testimony is that the expert is qualified to testify competently regarding the matters he or she intends to address. Hansen, 262 F.3d at 1234; City of Tuscaloosa v. Harcros Chems., 158 F.3d 548, 563 (11th Cir. 1998). Rule 702 permits a person to qualify as an expert based upon knowledge, skill, experience, training, or education. Frazier, 387 F.3d at 1260-61.

The second requirement, discrete and independent from the witness's qualifications, is reliability. Frazier, 387 F.3d at 1261. While the criteria used to evaluate the reliability of non-

scientific, experience-based testimony may vary from case to case, the district court must evaluate the reliability of the testimony before allowing its admission at trial. Id. at 1261-62. It is not, however, the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence. Rosenfeld, 654 F.3d at 1193.

The third requirement for admissibility is that the expert testimony must assist the trier of fact. Thus, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person. . . . Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Id. at 1262-63.

**A. Qualifications**

According to the Curriculum Vitae, Dr. Pettingill earned his Ph.D. in economics in 1977 and acted as a professor of economics until 1996. (Doc. #144-2, pp. 17-22.) From 1996 to the present, he has acted as a forensic economist. (Id.) In the past thirty-four years, Dr. Pettingill has authored various publications focused on medical and professional practice financial analysis. Although he does not appear to have published any articles specifically related to the estimation of lost wages and benefits, the Court finds that he has sufficient knowledge and experience in financial analysis to qualify him to do so in this case.

**B.   Reliability**

By reviewing Yerk's tax returns and wage statements, Dr. Pettingill calculated Yerk's prior pay package with the Lee County Sheriff's Office as $50,009.00 (plus benefits). Although Yerk is in the process of completing his four-year degree in criminal justice, Dr. Pettingill opines that he is unlikely to work in the criminal justice field again because of the "residual impact" resulting from this lawsuit. Therefore, in making his calculations, Dr. Pettingill utilized a future starting wage of $27,000 per year, which according to him, is the approximate wage Yerk would be able to earn as a two-year Associate Degree graduate in the open labor market. (Id., p.5, ¶1.4.)

The Court finds Dr. Pettingill's calculations regarding Yerk's lost wages to be unreliable because he does not provide "good grounds" to support his conclusions. Daubert, 509 U.S. at 590. An expert's "knowledge" within the meaning of the Federal Rules of Evidence connotes more than subjective belief or unsupported speculation. Id.

First, the two-year Associate Degree wage of $27,000 per year is unverifiable based upon the information provided in Dr. Pettingill's report. According to plaintiff, the $27,000 number was obtained from the U.S. Department of Labor, Bureau of Labor Statistics, Monthly Labor Review, January Editions (Doc. #144-2, p.7, ¶4.1) and the citation is stated as "ibid,

www.census.gov/hhes/www/cpstables/03210/perinc/new04_000.htm[1]).
(Id., p.5, ¶1.4.)  The Court has reviewed both sources and is unable to locate the $27,000 figure.

Second, there is nothing in the report which supports Dr. Pettingill's conclusion that Yerk is unlikely to work in the criminal justice field in the future because of the "residual impact" of this lawsuit and that his four-year degree in criminal justice will be "practically worthless".[2]  The report includes no information regarding the relevant employment market, and merely stating that Yerk has unsuccessfully applied to various police departments in the local area is insufficient.  The Court finds Dr. Pettingill's application of the average wage of a two-year Associate Degree graduate questionable on its face.  Thus, testimony regarding the portion of Dr. Pettingill's report addressing lost wages will be disallowed.

Although defendant does not challenge the reliability of the remaining potions of Dr. Pettingill's report (the retirement benefit of $876,397.00, insurance $136,206.00, use of vehicle $158,761.00, and incentive pay $40,306.00), the Court finds that these figures are unsupported.  Dr. Pettingill does not provide

---

[1]The content of this website is no longer available and plaintiff has not provided this data as an exhibit.

[2]For example, some branches of the federal government will accept applications from individuals who have a four-year degree in any field, including criminal justice. http://www.opm.gov/qualifications/standards/IORs/gs1100/1102QAs.htm

any basis for his calculations and merely states various numbers in a conclusory fashion.  For example, Dr. Pettingill cites to the Florida Retirement System Special Risk Guidebook, and states that Yerk would have been entitled to 90% of his highest five years of earned income projected to his life expectancy and increased at 3.0% in the future.  Yerk's total retirement benefit, according to Dr. Pettingill, would have been $876,397.00, but he does not explain specifically how he reached this number.  The remaining benefits (insurance, vehicle use and incentive pay) suffer from the same deficiency.  Dr. Pettingill neither specifies the source of these numbers nor the methodology he used in making his calculations.  He also fails to explain the significance of the tables attached to his report.

**C. Helpfulness**

While expert testimony regarding lost wages and benefits would be helpful in assisting the jury determine damages in this case, the Court finds that this particular report and the testimony Dr. Pettingill proposes to provide at trial will not be helpful.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Strike Plaintiff's Expert Report and Preclude Testimony of Dr. Pettingill (Doc. #133) is **GRANTED.**

DONE AND ORDERED at Fort Myers, Florida, this   1st   day of December, 2011.

```
              _____
              JOHN E. STEELE
              United States District Judge
```

Copies: Counsel of record